Argued 19 March, decided 23 July, 1907.

STATE ex rel. *v.* SMALL.

90 Pac. 1110.

APPEAL IN EQUITY—EFFECT OF AS SUPERSEDEAS.
1. The supersedeas effect of a bond for costs in an appeal from a decree is considered but not decided.

WATERS FLOWING IN DITCHES AS REAL PROPERTY.
2. Whether the ownership of ditches and the assertion of the right to convey water through them is real property is referred to but not decided.

SUFFICIENCY OF EVIDENCE.
3. The evidence does not show with sufficient certainty that the defendant committed acts amounting to a breach of the injunction issued against him.

CONTEMPT—DEGREE OF PROOF REQUIRED.
4. In a proceeding for a contempt of court consisting of a violation of an order or process, the proof must be very clear.

Contempt proceeding initiated in the supreme court for an alleged violation of a decree of a circuit court committed after an appeal had been perfected.          DISMISSED.

For plaintiff there was a brief over the names of *Andrew Murray Crawford,* Attorney General, *Edward Byers Watson* and *W. J. Moore,* District Attorney, with oral arguments by *Mr. Crawford* and *Mr. Watson.*

For defendant there was a brief and an oral argument by *Mr. Charles Amos Cogswell.*

Opinion by MR. JUSTICE MOORE.

This is a special proceeding instituted in this court by the State of Oregon, upon the relation of F. M. Chrisman and C. D. Porter, against George H. Small, to punish him for an alleged contempt. The facts are that Annie C. Hough, having commenced a suit in the circuit court for Lake County against S. A. D. Porter to enjoin him from interfering with the flow of water in the channel of Silver Creek to her premises, the relators herein and Small were made parties defendant by order of the court, and, issues having been joined, a trial was had, and it was decreed April 7, 1905, that the defendant herein made the prior appropriation of water from that stream and was entitled to use 650 inches thereof for the irrigation of 1,400 acres of land. The injunction prayed for was granted, and the rights of all the parties were determined. An appeal from that decree was perfected October 19, 1905, by the relators and others, who gave an undertaking therefor, in which it was stipulated that they would pay all damages, costs and disbursements that might be awarded against them on the appeal, and the transcript was thereafter filed in this court. It is stated in the initiatory affidavit of the relators that about May 16, 1906, and while there was sufficient water flowing in Silver Creek to furnish the appellants the quantity decreed to each, respectively, Small, in violation of a stay of proceedings in the suit mentioned, maliciously turned the water out of the channel of that stream and away from the relators, and his continuous diversion, in July and

August of that year, of the quantity awarded him by the trial court, leaves practically no water in the creek for the relators, whereby they have suffered and will sustain irreparable injury by reason of his conduct. The defendant's affidavit, which is in the nature of an answer to the charge made against him, states the source of his title to the use of the water and the extent thereof as decreed to him.

1. It is contended by the relators' counsel that the statute of this state makes an undertaking on appeal, in suits of the kind specified, a supersedeas, in violation of which Small diverted more water from Silver Creek after the decree was rendered than he had theretofore taken from that stream, and, though the evidence is not direct and positive, it is convincing, and leaves no reasonable doubt of his guilt as charged; and, the appeal having transferred the cause, this court acquired jurisdiction thereof and possesses power to and should punish him for the constructive contempt. The statute permits a final decision of a circuit court to be reviewed by giving a notice of appeal and an undertaking therefor: B. & C. Comp. § 549. It is further enacted that the undertaking of the appellant shall be to the effect that he will pay all damages, costs and disbursements which may be awarded against him on the appeal, but that the proceedings shall not be stayed unless the undertaking also stipulates that the appellant will satisfy the judgment or decree appealed from, so far as it is affirmed in four particular instances (B. & C. Comp. § 550), referring to which, the statute contains the following provision:

"In cases not provided for in such subdivisions, when an appeal is perfected, with an undertaking for the appeal only, proceedings shall be stayed as if the further undertaking thereof had been given": B. & C. Comp. § 551.

Subdivision 2 of Section 550 provides that an appeal from a judgment or a decree given for the recovery of land, or for the partition thereof, does not operate as a supersedeas, unless the undertaking stipulates that during the possession of the real property by the appellant he will not commit, or suffer to be committed, any waste thereon, and that if such judgment or de-

cree, or any part thereof, be affirmed, he will pay the value of
the use and occupation of such property, so far as affirmed, from
the time of the appeal until the delivery of the possession thereof,
not exceeding a sum specified, to be ascertained and fixed by the
court or judge thereof.

2. Though the ownership of ditches by the relators, and the
legal assertion by them of the right to have the water of Silver
Creek flow in such trenches to their lands for the irrigation
thereof, may constitute real property (*Fudicker* v. *East River-
side Irrig. Dist.* 109 Cal. 29 : 41 Pac. 1024), we shall assume,
without deciding, that the decree rendered in the case of *Hough*
v. *Porter* was not a suit for the recovery of the possession of
land or for the partition thereof, so that an undertaking only
for appeal stayed the proceedings as if the further undertaking
therefor had been given. In *Dulin* v. *Pacific Wood & Coal Co.*
98 Cal. 304, 306 (33 Pac. 123), Mr. Justice HARRISON, in speak-
ing of a supersedeas, says : "Originally it was a writ directed to
an officer commanding him to desist from enforcing the execu-
tion of another writ, which he was about to execute, or which
might come into his hands. In modern times the term is often
used synonymously with a stay of proceedings, and is employed
to designate the effect of an act or proceeding which of itself
suspends the enforcement of a judgment." In this state a writ
of supersedeas is unknown, though a certificate of probable
cause, issued by the trial judge, or by a justice of this court in
a criminal action, is tantamount thereto, the effect of which is
to suspend the enforcement of the judgment until it can be
reviewed on appeal: B. & C. Comp. § 1475 ; *State* v. *Armstrong,*
45 Or. 25 (74 Pac. 1025). We shall consider as true that the
giving of the undertaking on appeal in the case of *Hough* v.
*Porter,* which provided only for the payment of damages, costs
and disbursements, was equivalent to the granting of a writ of
supersedeas by this court, a violation of which subjects the
offender to punishment upon proceedings instituted in this tri-
bunal (High, Injunctions, 4 ed., § 1431*a*), on the theory that,
though actions at law and suits in equity are tried in this state
in the same court, the forums and procedure are essentially

distinct (*Union Power Co.* v. *Lichty,* 42 Or. 563: 71 Pac. 1044), and that an appeal from a decree brings up for review the entire suit, which is tried anew in the appellate court upon the transcript and the evidence accompanying it: B. & C. Comp. §§ 406, 555; *Day* v. *Holland,* 15 Or. 464 (15 Pac. 855).

3. Having disposed of those preliminary questions, we will consider the evidence in those proceedings, and in the suit of *Hough* v. *Porter,* as far as deemed applicable hereto. It appears that Silver Creek flows northeasterly and empties into Pauline Marsh, in Lake County. This stream divides on the defendant's premises, forming a delta. One fork, extending easterly, is known as the "Bunyard Branch," and another, westerly, is called the "Island Branch"; the latter emptying into the parent stream about a mile below the place of its departure. Bunyard Branch flows through the premises of the relator, Chrisman, who uses the water thereof for irrigation. Silver Creek and Bunyard Branch flow through lands of which the relator Porter has possession, and on which the waters of both streams are used for irrigation. The land where these branches head is practically level, and a dam placed in either stream at such place will necessarily divert most of the water at ordinary stages into the other forks.

The supplemental affidavit of the relator Porter is to the effect that, during the irrigating seasons of 1905 and the following year, the channel of Silver Creek, from the head of Bunyard Branch to a line below the premises of which he has charge, was dry, and in consequence thereof he was unable to irrigate such lands, except in the early seasons, when a freshet caused by melting snow filled the banks of the stream; that the supply of water from Bunyard Branch is inadequate properly to irrigate that part of such premises as are moistened by water taken from that fork, the bed of which is at least two and one-half feet higher than the bottom of the channel of Silver Creek; and that in 1906, when the affiant could not secure any water for irrigation, there were at least 200 inches of water flowing off the defendant's land, parallel with Island Branch, to the premises of other parties to the principal suit, who are Small's

friends. E. S. Parks deposed that in 1905 he was employed by the relator Porter, and irrigated a part of his lands, but that in June and July of that year he could not secure any water for that purpose, and was also obliged to remove the stock from such premises to a place where their thirst could be satisfied. P. W. Jones, J. L. Jones and B. L. Taylor severally affirmed that in the latter part of the irrigating season of 1906 no water was flowing in Bunyard Branch through the premises of which the relator Porter had possession. James Reeder deposed that in the irrigating season of 1905 he went to the head of Bunyard Branch to secure water for irrigation, and found in the channel of that stream cans and chips, and also a dam, in which an opening had been made, so that some water passed the obstruction, and that, as he was enlarging the aperture, the defendant arrived and ordered him to desist, and not to shovel out the head of that fork, saying that, if he did so, the augmented flow of water would abrade the bottom of the fork below the bed of the main creek; but that by putting some boards or sacks in the latter stream the water could be turned down Bunyard Branch. The statements contained in Reeder's affidavit are corroborated by the deposition of Floyd Lane, who was with him at the time mentioned, and deposed that they put a dam in Silver Creek and caused the water to flow into Bunyard Branch.

T. J. La Brie's affidavit is to the effect that about August 1, 1904, he placed a dam at the head of Bunyard Branch to free his meadow from moisture, so as to cut the hay thereon, and that about 20 days thereafter he told William Kittredge he might remove the obstruction, and the next morning after granting the permission the water flowed in the channel of that branch through his premises. Kittredge's affidavit states that he took out the dam at the time mentioned. It is quite probable that the entire obstruction was not removed, and that there was left in the channel of the branch part of the dam which Reeder and Lane saw about two years after it was built. It will be remembered that Porter's affidavit states that the bed of Bunyard Branch is at least two and one-half feet higher than the bottom of Silver Creek. P. W. Jones deposes that such difference is

two feet. E. K. Henderson affirms that the variation in the beds of the creek and branch is two and one-half feet, but, as he had theretofore stated, upon oath, that the difference was only five and one-half inches, his subsequent opinion on this subject was probably based on a measurement similar to that made by one C. E. Moore, a civil engineer, who, as a witness at the trial of the principal suit, testified that he considered the bottom of the main channel to be the base of the mud therein, saying: "I took a stick and run it down until it appeared to come to solid bottom, through the mud." S. A. Lester, J. H. Gowdy, James Sullivan, E. J. Egli, W. D. Robinett, J. L. Howard and James Newman severally deposed that on November 1, 1906, they found no obstruction to the flow of water at the head of Bunyard Branch, the channel of which was only five and one-half inches higher than the head of Silver Creek.

We think the preponderance of the evidence conclusively shows that the estimate given by the persons last named is correct, and that the channel of the main creek has not been lowered in any manner by the defendant; nor did he place any obstruction in the head of Bunyard Branch after the decree was rendered. The testimony taken at the trial of the principal suit shows that in 1885 a trench was dug from the east side of Silver Creek, commencing at a point on the defendant's land above the head of Bunyard Branch, which conduit is known as the "Old Corum Ditch," and owned by T. J. La Brie and his wife, W. C. Busick and James Small, who, after April 7, 1905, the day when the decree in such suit was given, changed in some particular the course of the old ditch, calling the alteration the "New Corum Ditch," which commences at a point in the old ditch some distance below its head, where the water is diverted into a conduit owned by the defendant and called the "Old Abshire Ditch," in which it flows about 300 yards and is then conducted easterly in the new ditch. The defendant permitted the alteration to be made in the ditch across his premises, and aided in its construction, and also exchanged the Old Abshire Ditch for that part of the Old Corum Ditch which extends

from its head to the point of departure of the new ditch. A dam placed in Silver Creek caused the water of that stream to flow into the head of the old ditch, as it did prior to any change therein. The affidavit of W. C. Busick states that more water was conducted in the old ditch than is carried in the new conduit. The relator Porter contradicts this declaration by deposing that the old ditch would carry only about three-fourths as much water as the new ditch, and that the defendant uses water flowing in the old ditch for irrigation. We have examined with much care the testimony taken in these proceedings, and are convinced from such inspection that the defendant has not used or diverted from Silver Creek any more water since the decree was rendered than he theretofore took from that stream; nor, after April 7, 1905, has he caused or permitted an increase in the flow of water off his premises, parallel with Island Branch.

It is maintained by the relator's counsel that, the undertaking on appeal having performed the office of a supersedeas, the *statu quo* of the flow of water in Silver Creek to the relators' land should have been maintained by the defendant after the decree was rendered as it existed immediately prior to the time the principal suit was instituted; but, as he has diverted a greater quantity of water from that stream since that time than he did prior thereto, he is guilty of constructive contempt of this court, and should be punished for such violation. If, before the decree was rendered, Small had never used any water from Silver Creek for irrigation, but, after he was awarded 650 inches thereof, he began to divert the measure granted him under an assertion of a right thereto, based on the court's decision, it would be possible to determine with certainty that the *statu quo* of the flow of water in the channel of the stream to the relator's lands had been disturbed by him. The testimony shows, however, that for many years prior to 1905 he had been using the water of Silver Creek for irrigation, under a claim of right thereto by an alleged prior appropriation thereof. Whether or not his right to such use is superior to the claim of all other parties to the principal suit, and, if so, what is the measure of the quantity to which he is entitled, are questions the considera-

tion of which must be deferred until the appeal in such suit has been heard and determined in this court; and, until such decision is rendered, it must be presumed that the decree of the lower court is correct in every particular.

4. In contempt proceedings for an alleged violation of an order or of the process of a court, the proof of the guilt of the person charged with the offense should be clear and conclusive before he is punished therefor. In the case at bar, the evidence is not of that character, and hence the proceedings are dismissed.                                                      DISMISSED.