Argued January 2, decided January 23; Modified on Rehearing June 25; Motion to Re-Tax Costs denied August 14, 1912.

## PORTER *v.* SMALL.

[120 Pac. 393: 124 Pac. 649.]

APPEAL AND ERROR—REVERSAL—RESTITUTION BY RESPONDENT.

1. Defendant could assume that the judgment of the trial court, adjudicating to him 650 inches of water for irrigation, was correct, and, without being a trespasser, continue to use that number of inches, pend-

ing plaintiff's appeal, where no stay of proceedings was taken pending appeal, and on reversal, by a decree adjudicating him only 40 inches, would not be bound to make restitution for the excess used pending the appeal.

WATERS—EFFECT—ENFORCEMENT.

2. A judgment decreeing defendant the right to use a certain number of inches for irrigation acts of its own force upon the subject-matter of litigation, the water, so as to entitle the defendant to use that amount without an execution.

APPEAL AND ERROR—UNDERTAKING ON APPEAL—EFFECT AS STAY.

3. An undertaking on appeal in a proceeding to adjudicate water rights, that defendants would "pay all damages, costs, and disburse-. ments which may be awarded against them" on their appeal or a dismissal thereof, did not stay the operation of the decree, but only stayed issuance of execution for costs and disbursements; it being necessary that an undertaking, in order to stay the decree, should conform to Section 551, subd. 2, L. O. L., providing that if the judgment be for the recovery of realty, the undertaking on appeal shall provide that during appellant's possession thereof he will not suffer any waste, and, if the judgment be affirmed, will pay the value of the use and occupation from the time of appeal until delivery of possession, since Section 6545 declares all flumes and ditches affixed to the soil, constructed under the act, to be real estate, and Section 6668 makes all water used for irrigation purposes appurtenant to the land.

From Lake: GEORGE NOLAND, Judge.

Statement by MR. JUSTICE McBRIDE.

This is an action by Wesley F. Porter, Easter A. Porter and Carl D. Porter, minor heirs of S. A. D. Porter, deceased, by James C. Porter, their guardian, against George H. Small.

The inception of this proceeding may be referred to the case of *Hough* v. *Porter,* 51 Or. 318 (95 Pac. 732: 98 Pac. 1083: 102 Pac. 728).

On October 8, 1900, Annie C. Hough began a suit against A. D. Porter, plaintiff's ancestor, claiming the right as riparian owner to use 500 inches of the waters of Silver Creek for the irrigation of her land, and alleging that Porter was unlawfully diverting the same. Porter answered, claiming his diversion as a prior appropriator, and after a reply had put the case at issue it was referred, and on October 23, 1901, the court, after con-

sidering the testimony reported, came to the conclusion that it could not finally adjudicate the disposition of the waters of Silver Creek without bringing in other parties, claiming water rights upon the same stream, and thereupon an amended complaint was filed, introducing several additional plaintiffs and a large number of defendants, aggregating in all about 45 additional parties to the litigation. The present defendant, George H. Small, was one of those so brought in as a defendant, and he answered, claiming appropriation of 800 inches of the waters of Silver Creek prior to those of the other defendants and plaintiffs.

After the case was again at issue, it was referred, and the testimony, which practically involved the investigation of a dozen or more conflicting claims to the water, was finally taken and submitted, and the court decreed, among other things, that Small was entitled to 650 inches of water and Porter to 100 inches. In the meantime, Porter died, and his heirs were substituted. An appeal was taken by them and others to this court, and an undertaking to "pay all costs, damages or disbursements which may be awarded against them or either of them on said appeal or a dismissal thereof" was duly filed. On January 5, 1909, a decree was made by this court, reversing the award of 650 inches to Small, and reducing his amount to 40 inches, and allowing the Porters 100 inches.

Plaintiffs bring this action, setting up the undertaking given by them on the appeal in *Hough* v. *Porter,* and alleging that during the years 1905, 1906, 1907, and 1909, respectively, there were 800 inches of water in Silver Creek, of which plaintiffs were entitled to 100 inches, Small to 40 inches, Annie C. Hough and John C. Porter to 100 inches each, without priority between them, Lucinda Egli, 120 inches, and Marion Conley, 100 inches, aggregating in all 560 inches, which was the amount allowed by the decree of the Supreme Court.

The complaint further alleges that during the period above mentioned defendant, with full knowledge and notice of the rights of plaintiffs, maliciously, unlawfully, and wrongfully, and without probable cause, and for the purpose of injuring and defrauding the plaintiffs by drying up their land and destroying the grasses growing thereon, suitable for hay, and to cause them to lose their hay crops on the land, and to compel them to obtain water for their stock from other sources, at additional expense, diverted the water from plaintiffs' lands, to their damage, etc. The complaint, which is of great length, contains six causes of action, of which the foregoing is the merest outline, but it serves to indicate its general scope. To this complaint, defendant interposed a general demurrer, which was sustained, and plaintiffs appeal.

AFFIRMED.

For appellants there was a brief over the names of *Mr. Edward B. Watson, Mr. W. J. Moore* and *Mr. Thomas S. Farrell,* with an oral argument by *Mr. Watson.*

For respondent there was a brief over the names of *Mr. W. Lair Thompson, Mr. John A. Carson,* and *J. D. Venator,* with oral arguments by *Mr. Thompson* and *Mr. Carson.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. The foregoing is not a full statement of the issues presented by the complaint, but is sufficient to indicate the points involved in the decision of the demurrer. Briefly stated, the controversy is this: The circuit court, by the decree in *Hough* v. *Porter,* adjudged defendant, Small, to be entitled to 650 inches of the waters of Silver Creek. Acting in pursuance of such decree, Small took about that amount, or so much of it as he wanted, to the detriment of plaintiffs' lands and crops, until the modification of the original decree, which gave

Sig. 19

him only 40 inches. If the modification of the decree by
this court restores all parties to their original status,
and attaches to all acts done in pursuance of it the same
wrongful character which they would have possessed,
had no such decree been rendered, then defendant is a
trespasser *ab invito,* and the demurrer was not well taken.
If, on the other hand, the decree of the circuit court was
valid until reversed, and the defendant had a legal right
to rely upon the correctness of it, his act .in pursuance
of it, if then lawful, will not become a tort by reason
of a modification of the decree by an appellate court.
The question is one of great difficulty, not heretofore
passed upon by this court, and one upon which there is
an astonishing scarcity of precedent in the decisions of
other jurisdictions. The text-writers seem to be as much
at sea upon the proposition as the courts. Thus, Free-
man, Judgments (3 ed.) Sec. 481, states the general rule
as follows:

"The reversal of a judgment by any competent author-
ity restores the parties litigant to the same condition in
which they were prior to its rendition. The judgment
reversed becomes mere waste paper; and the parties to
it are allowed to proceed in the court below to obtain
a 'final determination of their rights' in the same manner,
and to the same extent as if their cause had never been
heard or decided by any court."

Taken by itself, this would seem to settle the whole
matter in favor of plaintiffs' contention, but in the suc-
ceeding section the following language is used:

"Upon the reversal of the judgment against him, the
appellant is entitled to the restitution, from the respond-
ent, of all the advantages acquired by the latter by virtue
of the erroneous judgment. The successful appellant is
entitled to a restitution of everything still in possession
of his adversary, in specie; not the *value,* but the *thing.*
If money has been collected by the plaintiff in the judg-
ment, under execut:cn, an action lies against him to

recover it back. * * But a subsisting judgment, though afterwards reversed, is a sufficient justification for all acts done by plaintiff in enforcing it, prior to the reversal. Thus, if the defendant be taken in execution, the subsequent reversal of the judgment will not render the plaintiff liable to an action for false imprisonment. For the act of imprisonment, where directed by the plaintiff, was sanctioned by a then valid judgment. But the plaintiff on the reversal is liable to an action to recover the damages occasioned by a sale of the defendant's property made under the judgment prior to its reversal. Where the plaintiff has purchased the property, and still has it in his possession, the defendant may, at his election, affirm the sale and have his action for damages."

In *Williams* v. *Simmons,* 22 Ala. 425, which was an action in assumpsit to recover money collected from an administrator's surety, by execution upon a decree which was afterwards reversed, the court say: "A judgment reversed is regarded as if it had never existed, and the parties are restored to their rights as they were before it was rendered. * * After the reversal of the first decree, then, the defendant in error held the position of a party who had possessed himself of the property of another, without even the color of right to retain it. True he had the right when he acquired the possession but he has since lost it, and his possession has become tortious. * * He was bound to see, and doubtless, as he supposed, did see, that his proceedings were legal. In the collection of the money, he stood strictly upon his legal rights, and he cannot complain that the plaintiff in error, after the judgment is reversed, stands upon his; nor can he be said to hold the position of one paying out money without notice that there was an adverse claim to it in his hands. The fact that he collected the money forcibly by law, and alone upon the ground of legal right in himself, must always affect him with notice, so far as respects the rights of the plaintiff in error."

In *Hay* v. *Bennett,* 153 Ill. 271 (38 N. E. 645), an administrator was directed by a decree of the court to pay out of funds in his hands $3,500 to one of the parties to the suit in which the decree was rendered. He paid the money while the decree was in force and according to its terms. Afterwards the decree was reversed, and subsequently a suit was brought against him to recover the money. He justified payment by reason of the decree, but the court held that he, having been a party to the original suit, was bound by such reversal, although he had paid the money, relying upon the validity of the decree. This case is cited with approval in *Miller* v. *Doran,* 245 Ill. 200 (91 N. E. 1039).

In *Stanbrough* v. *Cook,* 86 Iowa, 740 (53 N. W. 131), which was an action for crops taken by defendant under a judgment which was afterwards reversed, the court say: "To our minds, the appellant discovers and solves the problem thus presented for us when he says in argument: 'There is now, however, a practical difficulty in the way of our relying on the former judgment, namely, that it has been reversed.' That is the true solution, and renders further comment unnecessary. An erroneous judgment, not final, would not protect the defendant in taking the property of the plaintiff. But it is said the former judgment for the defendant 'takes him out of the category of tresspassers, and puts him in as good a position as a defendant in an ordinary action for the recovery of real property.' This is urged on the theory of his good faith. But the wrong done in good faith does not make it, in a legal sense, right. * * While good faith may sometimes affect the extent of liability for trespass, it does not excuse it. We are led intuitively to the thought suggested by the appellant that the judgment was reversed. It was not final, but erroneous, and gave no rights." To like effect is the decision in *Reynolds* v. *Hosmer,* 45 Cal. 616.

In *U. S. Bank* v. *Bank of Washington,* 6 Pet. 8 (8 L. Ed. 299), which was an action in assumpsit for money collected upon an execution of a judgment which was afterwards reversed, the court say: "On the reversal of the judgment, the law raises an obligation in the party to the record, who has received the benefit of the erroneous judgment, to make restitution to the other party for what he has lost, and the mode of proceeding to effect this object must be regulated according to circumstances. Sometimes it is done by writ of restitution, without *scire facias,* when the record shows the money has been paid, and there is a certainty as to what has been lost. In other cases, a *scire facias* may be necessary, to ascertain what is to be restored. * * And, no doubt, circumstances may exist where an action may be sustained to recover back the money."

The case of *McCallister* v. *Bridges,* 40 S. W. 70 (19 Ky. Law Rep. 107), is a case apparently in point for the contention of plaintiff in the case at bar, but in a subsequent hearing of the same case *Bridges* v. *McAllister,* 106 Ky. 791 (51 S. W. 603: 21 Ky. Law Rep. 428: 45 L. R. A. 800: 90 Am. St. Rep. 267), the opposite view is taken by the court in a strong and convincing opinion. The expressions in the original case seem to be to a great extent dictum, and are ignored by the court in its final opinion. In fact, the official reports of the state do not contain the original opinion, which is indorsed "not to be reported," and is printed only in an unofficial publication.

We have thus given the principal dicisions tending to support the contention of plaintiffs, preferring, in most instances, to give the language of the courts, rather than our construction of it.

We will now advert to some of the principal decisions tending to support defendant's contention, which, briefly stated is: That being brought involuntarily into court,

and having there obtained a decree that he has a right to 650 inches of water, he was justified in assuming that the court was right and had correctly construed the law, and in acting on that assumption until the decree was reversed; that until the final decree in the Supreme Court the decree of the lower court was valid and subsisting, and that as he could not be a trespasser while acting under a valid and subsisting decree, the same acts did not become torts when that decree was reversed.

The principal case relied upon by defendant, and one in many respects similar to the case at bar, is *Bridges* v. *McAllister*, 106 Ky. 791 (51 S. W. 603: 21 Ky. Law Rep. 428: 45 L. R. A. 800: 90 Am. St. Rep. 267). Bridges and McAllister owned adjoining lands. A ditch had been dug from the land of McAllister, in order to drain certain swamp ground thereon, down to and upon the land of Bridges. In the course of years, it had become partially filled up, and McAllister and others reopened it, so as to more completely effectuate its original purpose of draining their lands. Bridges brought a suit, and obtained a decree prohibiting McAllister from using the ditch for the purpose of drainage, and directing that it should be filled up entirely. Pursuant to this agreement, the ditch was filled entirely, so that the water, which had been accustomed to flow through it in its partially obstructed condition, was thrown back upon the lands of McAllister, to the serious injury of his crops. Upon appeal, the decree was so modified that the ditch was permitted to be maintained in its partially obstructed condition; but that part of the decree which required it to be filled entirely was reversed. Thereupon McAllister brought an action in tort against Bridges for damages occassioned by the complete filling up of the ditch. Bridges answered, setting up the decree under which he acted as justification. The court struck out this portion of his

answer, and he appealed. The reasoning of this case seems so cogent that we quote it in its entirety:

"The main question arising on this appeal is as to the effect of the reversed judgment on acts done under it and in obedience to it before its reversal, when it was not superseded. In Freeman on Judgments (section 482) it is said: 'But a subsisting judgment, though afterwards reversed, is a sufficient justification for all acts done by plaintiff in enforcing it prior to the reversal. Thus, if the defendant be taken in execution, the subsequent reversal of the judgment will not render the plaintiff liable to an action for false imprisonment; for the act of imprisonment, when directed by the plaintiff, was sactioned by a then valid judgment.' And in section 104b the same author says: 'The case of a judgment set aside for irregularity differs materially from that of one reversed upon appeal. In the latter case, the error for which the judgment is ultimately avoided is imputed to the court, and the parties are not left without protection for the acts which they have done, based upon the judgment, and upon their confidence in the correctness of the decisions of the court.' The same principles are laid down in Black, Judgments, §§ 170, 355. In *Kaye* v. *Kean*, 18 B. Mon. (Ky.) 847, Kean obtained a mandamus against Kaye, which he refused to obey, and, being imprisoned for disobedience, brought suit against Kean, upon a reversal of the judgment awarding the mandamus, for damages for his imprisonment. His petition was dismissed. The court said: 'The judgment of the circuit court was not void, bue merely erroneous. * * So long, therefore, as the judgment remained in force, unsuspended and unreversed, it was the duty of the appellant to have rendered obedience to it. His contumacy subjected him to be proceeded against for a contempt, and as, therefore, there was sufficient cause for his imprisonment, he cannot maintain an action therefor against the appellee.'

"In *Clark* v. *Rodes,* 12 Bush (Ky.) 16, again this court said: 'A judgment is a final and conclusive determination of the rights of the parties to the litigation, and until it shall be reversed, vacated, or modified in some one of the modes provided by law the parties cannot refuse to obey it; nor can they, by subsequent litigation, indemnify themselves against its legal consequences.'

"In *Fraser's Ex'r* v. *Page,* 82 Ky. 73, an executor who had paid out a fund under a judgment which was not superseded, and afterwards reversed, was held protected by it for acts done in obedience to it while in force. The same ruling was made in *McKee* v. *Smith's Adm'r,* 5 Ky. Law Rep. 224; *Shultz* v. *Beatty,* 6 Ky. Law Rep. 662; *Showalter* v. *Simmons,* 5 Ky. Law Rep. 423; *Dudley* v. *Beatty,* 5 Ky. Law Rep. 773.

"These cases proceed upon the principle that what was lawful when done does not become unlawful by reason of subsequent acts. The chancellor, in entering the judgment in the case referred to, did not act as the agent of either of the parties. The judgment was the act of the law. Neither party could control the court, and neither was responsible for his actions. The law constituted a tribunal to determine the rights of the parties. That determination, proceeding from a power above them, was in no sense their act. A litigant in this court does not procure the judgment entered in any such sense as to render him responsible for the consequence of the judgment or its reversal by the United States Supreme Court. We have been referred to no case, and can find none, where an action for damages has been sustained, upon the reversal of a judgment for acts done pursuant to it, as for a tort. The fact that there are no precedents for such recovery seems at this day conclusive that it has not been recognized as admissible by either the bench or bar. When a judgment is reversed, restitution must be

made of all that has been received under it; but no
further liability should in any case be imposed. The case
of *Hays* v. *Griffith*, 85 Ky. 375 (3 S. W. 431: 11 S. W.
306: 9 Ky. Law Rep. 65), is not supported by the weight
of authority, and cannot, in our judgment, be maintained
on principle, so far as it lays down a greater liability.
The quotation made from Freeman on Judgments is from
a sentence omitted altogether in the last edition. The
opinion is supported only by some cases in Illinois and
California, and is contrary to the rule followed by the
United States Supreme Court and all the other state
courts, so far as we have seen. It is also in conflict with the
well-settled rule that the court, in ordering or confirming
a judicial sale, and the commissioner in making it, do
not act as the agent of the plaintiff. *Bank of U. S.* v.
*Bank of Washington*, 6 Pet. 9 (8 L. Ed. 299); Rorer
Judicial Sales, §§ 1-12; *Forman* v. *Hunt*, 3 Dana, 621.

"Appeals may be taken from judgments ordinarily
within two years, but sometimes within five or twenty
years, and it would often produce intolerable hardship to
hold a litigant responsible for the consequences of an
erroneous judgment under such circumstances. The
object in having trust estates, including those of deced-
ents, or those assigned for the payment of debts, settled
in equity, under the direction of the chancelor, is to pro-
tect the parties in the payment of the money, as well as
to secure to every one his rights. A creditor with a small
claim, who moved for a distribution of the fund,
would, under the rule referred to, be responsible
for the entire fund upon the reversal of the judgment,
although he had received only a few dollars of it. Such
a rule would destroy all confidence in judgments of courts,
and make them the prolific parent, in many cases, of
ruinous litigation.

"Our system of courts and the principles governing
them are derived from the common law. But in England

the tribunal was called the 'curia' or court, because it was held by the king himself originally. The judgments of the court read as the judgments of the king, and when he ceased to hold the court in person, and delegated this function to one of his officers, the character of the judgment was the same. Manifestly there the subject was not responsible for damages for the act of the king. In this country the power vested in the king vests in the body of the people, and the courts sit as their representative. The law, from principle and policy, requires that full confidence should be given to their judgments while in force. It tends to prevent the troubles incident to the settlement of disputes by the act of the parties, often bringing about breaches of the peace or bloodshed. It is the duty of every good citizen to obey the mandates of the law, and no one should incur any responsibility by doing that which it was his duty to do. It is also the duty of every citizen to uphold the authority of the courts and maintain respect for their judgments; and when in doing this he obeys a judgment of the court it is a sound and safe rule that no liability for damages should arise therefrom."

In a valuable note to this case, in 45 L. R. A. 800, the editor says:

"The pervailing doctrine is that the reversal of a judgment which is merely erroneous, as distinguished from one that is irregular, void, or voidable, merely creates a right *ex. aequo et bono* to have restored what has been lost, and that it does not relate back, so as to render wrongful acts done under the judgment which were justified at the time."

*Mark* v. *Hyatt,* 135 N. Y. 306 (31 N. E. 1099: 18 L. R. A. 275), was a case where the plaintiff sued to restrain infiringement upon certain patents, and after hearing obtained an injunction. Upon appeal to the general term of the Supreme Court, the case was reversed. Plaintiffs.

sued for damages. The court said: "The patentee lawfully and fairly submitted her rights to the decision of the court. While the judgment rendered was in one respect erroneous, neither the party nor the court was therefore a trespasser. Some injury or inconvenience quite often flows from the operation of an erroneous judgment, pending the appeal, which ends in a reversal; but there is no trespass and no trespasser. To some extent, the evil is prevented by provisions which stay the executions of the judgment and authorize a summary restitution; but no action of trespass will lie to recover the damages, unless the prosecution is alleged and proved to have been malicious and without probable cause. We have held that doctrine quite firmly and clearly in cases of injunctions, declaring, in substance, that, although the restraining order ought not to have been granted, and was set aside for that reason, yet the damages incurred, where the proceedings have been regular, cannot be recovered in the absence of an undertaking, except upon the basis of a malicious prosecution. *Lawton* v. *Green,* 64 N. Y. 326; *Palmer* v. *Foley,* 71 N. Y. 106.

We have tried fairly to present the principal authorities bearing either way upon the matter in controversy in the case at bar, for the reason that the precise point involved here has not been previously decided by this court, and because the question is of such nicety and difficulty that counsel in the case and the bar generally are entitled to all the data upon which this court bases its conclusion upon a question which no candid lawyer can say is beyond controversy.

We are of the opinion that in a case like the present one, where as we shall presently show, the decree is self-executing, and no stay of proceedings is asked or taken on the appeal, that the successful party in the court below has a right to assume that the decree if the court is lawful and proper, and that he will not subject

himself to an action for tort in acting upon that assumption.

2, 3. This is not like a case where an execution or order of the court is necessary to enable the party to reap the fruits of his decree. It acts *propria vigore* upon the res—the right to use the water. *Day* v. *Holland,* 15 Or. 464, (15 Pac. 855). The appeal and the undertaking given did not stay the operation of the decree. It only stayed the issuance of an execution for costs and disbursements. *Day* v. *Holland,* 15 Or. 464 (15 Pac. 855) ; *Willis* v. *Willis,* 165 Ind. 332 (75 N. E. 655: 2 L. R. A. [N. S.] 244: 6 Am. & Eng. Ann. Cas. 772, and cases there cited).

The undertaking on appeal given in the suit of *Hough* v. *Porter* would have afforded this defendant no remedy, had he treated it as suspending his right to use the water during the pendency of the suit. It is conditional that "defendants will pay all damages, costs and disbursements which may be awarded against them or either of them on said appeal, or a dismissal thereof." Now suppose that Small had refrained from using the water until the final disposition of that case in this court, and finally prevailed, what redress could this court have given him upon this undertaking, for being deprived of the use of the water? Manifestly none. Its functions are purely revisory. It could only have given him costs and disbursements. Water used for the purposes of irrigation is for many purposes treated as real estate; it is appurtenant to the land. Sections 6545, 6668, L. O. L. Being so appurtenant to the land, we are of the opinion that an undertaking, to be effectual as a stay in cases of this character, should conform to the requirements of subdivision 2 of Section 551, L. O. L. Under this section, the appellant could have had the value of the use of the water fixed beforehand by the circuit judge, and the prevailing party would have had a definite right to resti-

tution which, while not affording in all cases complete compensation, would have as nearly approximated to it as is possible in such cases. Plaintiffs also had another remedy by applying to this court for an injunction, as was done in *Livesley* v. *Krebs Hop Co.,* 57 Or. 252 (97 Pac. 718). In such a case, the court could have required an undertaking sufficient to indemnify Small in case he should prevail in this court, and upon this being given could have expressly enjoined him from diverting water during the pendency of the appeal.

Plaintiffs did not seem to have such confidence in the merits of their appeal as to be willing to take any chance of paying damages in case it should be adjudged groundless, and they should not now be permitted to mulct Small in damages, because he was not wiser than the circuit court, and did not know the law which this court consumed 125 pages of the Oregon reports in explaining.

It is often said that there is no wrong without a remedy, and, while this is generally true, a remedy may be lost by inaction or want of diligence; and, if we concede that it was wrong for defendant to assume that the circuit court had properly adjudged the law, we have already indicated that plaintiffs had it in their power to minimize the effects of that wrong by giving a proper undertaking, or by applying to this court for an injunction. But we are not prepared to say that defendant, under the circumstances, was guilty of an actionable wrong. As was said by the court in *State* v. *Small* 49 Or 603 (90 Pac 1110), which was a proceeding to punish this defendant for contempt for committing the very act upon which this action is predicated, "until the appeal in such suit is heard and determined in this court, and until such decision is rendered, it must be presumed that the decree of the lower court is correct in every particular." The defendant had the right to indulge in this presumption, and if his act was not a tort when per-

formed it cannot become a tort by relation, upon reversal of the decree.

Judgment affirmed.

AFFIRMED.

---

Decided June 25, Motion to Re-Tax Costs denied August 14, 1912.

## ON REHEARING.

[124 Pac. 649.]

On petition for rehearing there was a brief for appellants over the names of *Messrs. Watson & Beekman, Mr. W. J. Moore* and *Mr. Thomas S. Farrell.*

For respondent there was a brief over the names of *Mr. W. Lair Thompson* and *Mr. John A. Carson.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

In their able brief on petition for rehearing counsel for plaintiffs contend that the opinion of this court in *State* v. *Small*, 49 Or. 595 (90 Pac. 1110), is a conclusive determination in plaintiffs' favor that the undertaking given by appellants in *Hough* v. *Porter* operated as a supersedeas. The language used by the court in that opinion is a follows: "Though the ownership of ditches by the relators and the legal assertion by them of the right to have the water of Silver Creek flow in such trenches to their lands for the irrigation thereof may constitute real property, * * we shall assume, without deciding, that the decree rendered in the case of *Hough* v. *Porter* was not a suit for the recovery of the possession of land or for the partition thereof, so that an undertaking only for appeal stayed the proceedings as if the further undertaking therefor had been given." The court then goes on to discuss the evidence, and holds that Small is not shown to have been guilty of contempt. It will be seen from the language quoted that the court expressly declined to pass upon the question as to whether

the undertaking operated as a supersedeas, but held in effect that, even if that were the case, the evidence was not sufficient to justify convicting Small of contempt. We cannot assent to the reasoning which holds that by some sort of legal legerdemain the court as a matter of law must have decided that which it expressly refused to decide.

This court has never intimated that plaintiffs might not have restitution by an appropriate action probably in *quasi* contract for any profits, or perhaps for rentals of water appropriated by Small during the pendency of the appeal of the case of *Hough* v. *Porter*. We only hold that in this action, which is in tort pure and simple, he cannot recover, and we adhere to that view. It is, however, called to our attention that paragraph 5 of the complaint states a cause of action arising from a wrongful diversion of water during the irrigating season of 1909, and subsequent to the rendition of the decision in *Hough* v. *Porter*. This was not called to our attention on the original argument, and we are of the opinion that as to that cause of action the demurrer was improperly sustained. Our former opinion is therefore modified to the extent that the judgment of the lower court, sustaining the demurrer to the fifth cause of action, is reversed, and the cause remanded for proceedings not inconsistent with this opinion.

MODIFIED ON REHEARING: MOTION TO RE-TAX COSTS DENIED.