VILLAGE OF BROWN DEER, Respondent, v. CITY OF
MILWAUKEE and another, Appellants.

*November 5—December 18, 1959.*

For the appellants there were briefs by *Walter J. Mattison,* city attorney, and *Richard F. Maruszewski* and *John F. Cook,* assistant city attorneys, attorneys, and *Harry G. Slater,* deputy city attorney, of counsel, and oral argument by *Mr. Slater, Mr. Maruszewski,* and *Mr. Cook.*

For the respondent there was a brief by *Harold H. Fuhrman,* village attorney, and *John P. Roemer* and *Ralph*

*M. Hoyt,* special counsel, all of Milwaukee, and oral argument by *Mr. Fuhrman* and *Mr. Roemer.*

BROADFOOT, J.   By sec. 269.56, Stats., Wisconsin enacted the Uniform Declaratory Judgments Act.  This action was brought under that statute.  The trial court was asked to pass upon the validity or invalidity of certain ordinances adopted by each of the municipalities, all of which were enacted with a view to annexing certain territory in the then town of Granville.

This was truly an adversary proceeding with each step in the long trial bitterly contested.  It was evident to the trial court that each municipality intended to litigate the issues through the highest possible tribunal.  Although we are certain the trial court did not anticipate a reversal of the judgment in any particular, he did realize that confusion might result if there was even a partial reversal. His order, which would have the effect of maintaining the *status quo,* contained an element of practicality.  However, bitter adversaries are not always practical, nor do they welcome practical suggestions.  Therefore we must analyze the order in the light of the applicable law.

The declaratory judgment entered herein determined the issues presented without ordering anything further to be done.  Neither party was commanded to do anything nor was either party ordered to refrain from doing anything therein.  The judgment stands by itself and no execution or other process is required by its terms.  Therefore the portion of the order staying execution of the judgment is without meaning.

The city of Milwaukee relies principally upon the case of *Slabosheske v. Chikowske,* 273 Wis. 144, 77 N. W. (2d) 497.  The village contends that the issues raised by this appeal are moot by virtue of an automatic statutory stay of judgment because the appeal is by a municipality.  In sup-

port of its position it cites sec. 274.26, Stats., which provides that an appeal by a municipal corporation stays the execution or performance of the judgment or order appealed from and no undertaking be given. That contention is answered in the *Slabosheske Case, supra,* wherein we said (pp. 153 to 155):

"It appears, then, that the appeal of *State ex rel. Oelke v. Doepke, supra,* by itself, operated, as appellants contend, to stay the execution of the judgment of the trial court, or as a supersedeas, although no stay was asked or security given. (The terms 'stay' and 'supersedeas' are used interchangeably in the texts and decisions.) But while appellants are correct in their contention their prospects are not brightened, for such a stay or supersedeas merely 'stays the proceedings of the body or tribunal which made the determination sought to be reviewed.' *Hedberg v. Dettling* (1929), 198 Wis. 342, 344, 224 N. W. 108. More recently, Mr. Chief Justice ROSENBERRY, speaking for the court in *Carpenter Baking Co. v. Bakery S. D. Local Union* (1941), 237 Wis. 24, 30, 296 N. W. 118, defined the scope of such a stay by quoting from *Sixth Avenue R. R. Co. v. Gilbert E. R. R. Co.* (1877), 71 N. Y. 430, as follows:

" 'By the appeal [from the judgment], with a stay of proceedings on the part of the plaintiff in execution of the judgment, the judgment was not annulled, or its obligations upon the defendant impaired, but its "execution" was stayed—that is, the plaintiff was prohibited from issuing process in execution of it.'

"Thus it may be conceded that the appeal from the judgment of *State ex rel. Oelke v. Doepke, supra,* without any bond or other security, was effective to stay the proceedings of the trial court, as the tribunal whose determination was in process of review, but the appeal had no such effect upon any other body such as District 7 which had been revived by the judgment but had not, by it, been commanded to do or refrain from doing anything and which neither asked nor required any proceedings by the trial court in aid of its operations. 'Supersedeas may not be used as a remedy against persons acting independently of a court and without

the aid of its process.' 83 C. J. S., Supersedeas, p. 893, sec. 3.

" '2, 3   This is not like a case where an execution or order of the court is necessary to enable the party to reap the fruits of his decree. It acts *proprio vigore* upon the res— the right to use the water. *Day v. Holland,* 15 Or. 464, (15 Pac. 855). The appeal and the undertaking given did not stay the operation of the decree. It only stayed the issuance of an execution for costs and disbursements.' *Porter v. Small* (1912), 62 Or. 574, 588, 120 Pac. 393, 397."

It is contended by the city, without denial by the village, that the direct result of the declaratory judgment is that the areas described in ordinances Nos. 31, 35, and 53 of the village of Brown Deer have been in the city since the consolidation of the town of Granville with the city. Other statutes not in issue require the city to provide certain municipal services to persons residing within its boundaries. Even though the village has stated that it is willing to assume those duties and to supply those services in a portion of the disputed area, the trial court was without power to relieve the city of its obligations. Prior to the entry of the judgment herein the city had been servicing the area covered by its ordinance of annexation No. 631. That ordinance has now been declared invalid by the trial court. By the order the city would be required to finance services in an area that has been judicially determined to belong to the village. The trial court had no authority to impose that duty upon the city.

Other arguments made by each of the parties have been considered, but the foregoing is controlling.

*By the Court.*—Order reversed.

CURRIE, J. (*dissenting*). It is apparent that the laudable objective of the learned trial court's order of September 25, 1959, was to preserve the *status quo* in the disputed territory pending determination of the appeal in this court.

It would be most disruptive to have the administration of such territory changed from one municipality to the other, and then a few months later have it changed back because this court reversed the trial court's determination.

The majority opinion addresses itself chiefly to the narrow issue that there can be no stay of execution of a declaratory judgment because it is self-executing. No consideration is given to the right of the trial court to invoke its inherent equitable powers.

Relief by declaratory judgment is *sui generis,* and while not strictly legal or equitable, its historical affinity is equity. *Strype v. Lewis* (1944), 352 Mo. 1004, 180 S. W. (2d) 688, 155 A. L. R. 99. As the New Jersey supreme court declared in an opinion by Chief Justice VANDERBILT in *New Jersey Turnpike Authority v. Parsons* (1949), 3 N. J. 235, 239, 69 Atl. (2d) 875, its Declaratory Judgments Act, which is similar to our own, "merely broadens the rationale of remedies long cognizable in equity."

The general rule is that either the trial court or the appellate court has the inherent power, independent of statute, to grant a stay. 4A C. J. S., Appeal and Error, p. 444, sec. 634. Such a stay should be granted when necessary to preserve the *status quo* and also when, as in the instant case, the appeal presents debatable questions of law. Ibid., p. 453, sec. 636.

If the trial court possesses such inherent power to preserve the *status quo* pending an appeal by granting a stay, I can perceive no reason why it cannot do so by an order in the nature of an injunction in a situation, as here, where a stay would be ineffectual to accomplish such result. This should be especially true when the judgment is one which is equitable in nature, such as a declaratory judgment.

*State v. Adelmeyer* (1936), 221 Wis. 246, 265 N. W. 838, involved an action for a declaratory judgment to de-

termine the rights of the parties with respect to Horicon marsh. The trial court issued certain temporary orders directing the state to open the gates of a dam and otherwise to preserve the *status quo* pending the action. On appeal this court held that there was no merit to the state's argument that such orders were void for want of jurisdiction. If there is jurisdiction to enjoin the *status quo* in an action for declaratory relief before judgment, there ought to be equal jurisdiction to do so coincident with the entry of judgment, such injunctive order to be effective pending determination of an appeal that the trial court has been advised will be taken.

In the school-segregation cases, in spite of the determination that segregated schools were unconstitutional and therefore illegal, the United States supreme court remanded the cases to the trial courts with the power to permit the school districts to gradually integrate their schools. *Brown v. Board of Education* (1955), 349 U. S. 294, 75 Sup. Ct. 753, 99 L. Ed. 1083. This is precedent for the principle argued for here, that a judgment once entered, which is equitable in nature even though it finally adjudicates legal rights, does not deprive the trial court from exercising its equitable powers to suspend the operation thereof for some temporary period when equitable considerations demand that this be done.

The instant order under attack is unfortunately worded. I would modify it so as to enjoin maintenance of the *status quo* upon the parties pending appeal, and affirm the order as so modified.