[Filed June 1, 1885.]

## STEPHEN SANFORD v. JAMES WHEELAN.

SPECIFIC PERFORMANCE—COVENANT AGAINST ENCUMBRANCES.— Where in a contract for the sale of real estate the vendor agrees to covenant against encumbrances, specific performance will not be decreed in his favor until all encumbrances on the property shall have been removed, or at least reduced to the amount of the balance of the purchase price.

UMATILLA COUNTY. Defendant appeals. Reversed and bill dismissed.

The facts are stated in the opinion.

*John J. Balleray,* for Respondent.

That a vendor of real property can maintain a suit for specific performance we think cannot be questioned. (Pomeroy Spec. Perf. §§ 6, 162; *Old Colony R. R. Co.* v. *Evans,* 6 Gray, 30;

*Schroeppel* v. *Hopper*, 40 Barb. 430; *Robeson* v. *Hornbaker*, 2 Green Ch. 60; Pomeroy Eq. Juris. § 1405, n.) The encumbrances objected to could have been provided for in the decree itself, and if at the date of the decree the vendor is able to make a good title he is entitled to the remedy of specific performance. (Pomeroy Spec. Perf. §§ 339, 340, 341, 376, 377; *Church* v. *Mott*, 7 Paige, 77 ; *Winne* v. *Reynolds*, 6 Paige, 407 ; *Hepburn* v. *Dunlop*, 1 Wheat. 179.)

*Richard Williams*, for Appellant.

To entitle a vendor to specifically enforce a performance of a contract on the part of the buyer, he must be able to substantially comply with his contract. A failure to perform any material act on his part will defeat his suit, and the rule is more strictly construed against a vendor than against a purchaser. (3 Pom. Eq. Juris. § 1297.) The liens against this property fell due before the payments on the defendant's contract, and if deferred till payments under the contract became due would exceed them to the amount of over $100. It would be inequitable to decree specific performance under such circumstances. (Fry Spec. Perf. §§ 797, 805, 810, 814.) The respondent having failed to remove the liens from the premises, the appellant had a right to rescind the contract, and was not bound to accept a conveyance and rely upon his covenant. (*Lawrence* v. *Taylor*, 5 Hill, 115; *Wells* v. *Smith*, 7 Paige, 22 ; *Story* v. *Conger*, 36 N. Y. 673; 2 Story Eq. Juris. 6th ed. § 779; *Delavan* v. *Duncan*, 49 N. Y. 485; *Peters* v. *Delaplaine*, 49 N. Y. 367; *Judson* v. *Wass*, 11 Johns. 525; *Burwell* v. *Jackson*, 9 N. Y. 535.) The only object sought by the respondent's bill is to enforce the mere payment of money. The proper remedy to accomplish this is in a court of law. (3 Parson Contract, 364; *Phyfe* v. *Wardell*, 2 Edw. Ch. 46; *Richmond* v. *The Dubuque & Sioux City R. R. Co.* 33 Iowa, 422.)

THAYER, J.—This appeal is from a decree of the Circuit Court for the county of Umatilla. The respondent commenced a suit in that court against the appellant to enforce the specific

performance of a written contract under seal, of which the following is a copy:—

"Articles of agreement entered into this 8th day of April, A. D. 1882, between Stephen Sanford and James Wheelan: Witnesseth, that the said Stephen Sanford has sold, and doth agree, on or before the 22d day of April, A. D. 1882, to convey unto said James Wheelan, or his heirs or assigns, by a good and sufficient warranty deed of release and quit claim, free from all encumbrances, north half of lot 4, in block 1, in the town of Pendleton, Umatilla County, Oregon, upon said James Wheelan's faithful compliance with the covenants herein contained, by him to be done and performed. And the said James Wheelan doth hereby agree to pay to the said Stephen Sanford the sum of $3,000 in gold coin, the consideration money for said premises, in the manner following: Cash in hand upon the execution of the deed hereinbefore referred to, of the sum of $1,500, and the balance within one year from the date hereof. The said James Wheelan further agrees to pay all taxes and assessments that may be levied or assessed upon said premises during the time he shall hold the same under this agreement, and save the said Stephen Sanford harmless therefrom; and the said Stephen Sanford agrees that the said James Wheelan, complying with the covenants herein contained, to be done and performed by him, shall, from the 22d day of April, 1882, have and hold possession of said premises to use and occupy as his own in a husbandlike manner.

"In witness whereof the parties hereto have set their hands and seals.

[SEAL.]                              "S. SANFORD.
[SEAL.]                              "JAMES WHEELAN.
"Executed in presence of
      "FRED. PAGE TUSTIN.
      "EDGAR J. SOMMERVILLE."

It was alleged in his complaint in the suit that on the said 22d day of April, 1882, the time the said conveyance was to be made as provided in said contract, he prepared a deed of warranty, in terms conveying the said half of the said lot to the appellant,

and that he was ready and willing to deliver the same to him, and to put him in possession of the said premises, but that the appellant refused to receive it, or go into the possession of the premises, or perform the contract, and the respondent claimed as relief a decree that the appellant be required to accept the said deed, and to pay him the said sums of money in accordance with said contract, and for general relief.

The appellant averred in his answer that the said premises were, at the time of the execution of the said contract, and on the said 22d day of April, encumbered by mortgages of large amount, one of which was in favor of H. J. Vanschuyver & Co., executed by the respondent to said H. J. Vanschuyver & Co., November 18, 1880, given to secure payment of a promissory note from the respondent to said company for the sum of $1,540.66, with interest thereon from date, at the rate of one per cent per month until paid, and for $50 additional as attorney's fees, in case suit were instituted to collect it; that said note bore date November 17, 1880, and was payable in eight months thereafter. Another of said mortgages was executed by the respondent to S. Rothchild, R. Alexander, and Richard Lambert, to secure the payment of three promissory notes from the former to the latter parties for the respective sums following: $314.04, $622.42, and $203.99, each bearing date the 25th day of February, 1882, and payable ninety days therefrom, with interest at the rate of ten per cent per annum; and contained a provision for the payment of a reasonable attorney fee in case suit was instituted to collect it; and that both of said mortgages were, at the date of the execution of said contract, and had ever since been, wholly unsatisfied. Other issues were tendered by the answer, but it is unnecessary to notice them.

The respondent, in his reply to said matter in the answer, averred that said appellant had, at the time the contract was executed, actual and personal notice of said encumbrances; that he conferred with the mortgagees, and that they assured him that they would interpose no objection to the said sale, and that each of the encumbrances could, by the decree of the court in the suit, be discharged and paid out of the agreed purchase price, which

the appellant should be decreed to pay for the premises. The reply contained denials of other portions of the answer, but there was no other issue upon said matter of encumbrance than above mentioned. Testimony was taken in the case tending to prove and disprove the various issues between the parties. The Circuit Court heard the proofs and allegations, and decreed that the appellant pay into court immediately the sum of $3,000, and that execution issue therefor, and that said sum of money be applied by the clerk of the court to the satisfaction of the said mortgages in the order in which they were mentioned in the answer, and that the deed executed by the respondent and wife, a deed prepared and signed after the commencement of the suit, upon the payment into court of said $3,000, be delivered to the appellant; which is the decree appealed from. The only question of importance to be decided by this court is whether the appellant could equitably be compelled to accept the deed above referred to, and required to pay the sum stipulated. It was suggested at the hearing before this court that the vendor of real property could not enforce the payment of the purchase price in equity; but the rule seems to be otherwise. It proceeds upon the ground of a mutuality of remedies. The vendee in such cases having a right to compel the execution and delivery of the deed. the vendor may also enforce the undertaking of the vendee, although the substantial part of his relief is the recovery of money. (Pomeroy Spec. Perf. Cont. § 6.)

The authorities on this subject are very numerous and uniform, except where the remedy has been limited by statute. The remedy of the vendor, however, like that of the vendee, depends upon the peculiar circumstances of the case. A court of equity ought not to interfere and compel the acceptance of a deed, and payment of the purchase money, where it would operate as a hardship upon the party, unless in strict conformity with his contract. In the case under consideration the appellant had agreed by the terms of the contract to purchase the half lot of land and pay for it $3,000,. $1,500 thereof upon the execution of the deed, April 22, 1882, and the balance within one year from the date of the contract, April 8, 1882, and the respondent

was to convey to him by a good and sufficient warranty deed of release and quit claim, free from all encumbrances, the said half lot. The covenants in the agreement were mutual and dependent; neither party could compel the other to perform until he had performed upon his part. The property was encumbered at the time, and the deed first prepared by respondent was incomplete, but the latter difficulty was remedied immediately after the suit was commenced, and the former would not probably have prevented an enforcement of the payment of the money in accordance with the terms of the contract, if the court could have so applied it as to discharge the encumbrances. But the contract only provided for the payment of $1,500 at that time, which was entirely insufficient to pay off the first mortgage. The court decreed that the appellant pay the whole $3,000, but it had no right to do that. There is no power known to the law that could compel it. The deferred payment of $1,500 did not mature till April 8, 1883, nearly a year after the deed was required to be executed, and to compel the appellant to pay it at once imposed an obligation upon him he never stipulated to perform. He was to have a year in which to make that payment, without interest. The court, however, said he should pay it immediately, and this would not only be a hardship and loss, but it might be ruinous to a person of limited credit. Equity recognizes no such arbitrary authority as that. The great difficulty in the case arose out of the fact that the purchase price was inadequate to discharge the encumbrances. Had the $1,500 to be paid in hand been applied to the discharge of the encumbrances, it would have left about $300 still due and payable upon the first mortgage, and the second mortgage would have matured within a little more than a month thereafter; and when the second $1,500 was to become due by the terms of the contract, it would not have been sufficient by about $100, as the appellant's counsel figures it, to discharge both encumbrances. Courts of equity may be willing and anxious in such cases to give relief, although the literal and exact terms of the contract have not been complied with by the party who seeks their aid, but they certainly will not advance money for such party, nor impose a

severe hardship upon his adversary party.  It was the duty of the respondent to have attended to that matter before he called upon the appellant to pay the money.  He had covenanted to give a deed to the land, free from encumbrances, though his counsel says he was only to *covenant* against encumbrances; but in either case good faith and fair dealing required that he should have paid off the encumbrances, or have reduced them to the amount of the purchase price to be paid for the land, and obtained such an extension of time for their payment that such purchase price would have discharged them when paid, in accordance with the terms of contract, before he began his suit.

. The rule in *Hinckley* v. *Smith*, 51 N. Y. 21, is the correct one upon that subject.  But the respondent's counsel claims that the appellant was cognizant of the fact of the encumbrances when he entered into the contract.  The evidence is conflicting upon that subject; but suppose it preponderates in favor of the respondent, and that he only stipulated to give a deed containing a covenant against encumbrances, that would not relieve him .from the obligation to convey a pure title to the property.  His agreement to make a deed containing such a covenant was in effect an agreement that the property should be disencumbered.  A covenant against encumbrance is an assurance that the property, at the time of the ensealing and delivery of the deed, is then free therefrom.  That character of the covenant is personal, and relates to the time of the execution of the conveyance, and is immediately broken if any encumbrance exists.  The fact that the appellant knew of the existence of the mortgages may have been, as suggested by his counsel upon the argument, the reason and object of the stipulation in the agreement, that the respondent should give a deed free from all encumbrances.  There is no pretense that the appellant assured the payment of the mortgages.  The writing contradicts any intention of that kind. The respondent's counsel also claimed upon the argument that it did not appear that the full amount of the debts secured by the mortgages was unpaid, and that the burden of proof was on the appellant to show that it had not been paid; but it is enough to say, in answer to that position, that the allegation of the

answer, averring that both of said mortgages were wholly unsatisfied, is not denied in the reply. Besides, the circuit judge who heard the case finds especially, in his fourth finding of fact, " that no part of either of said notes had been paid up to this date," which was June 19, 1884. I see no possible way to help the respondent out in this case. The difficulty is that he has not done equity. It would clearly be unjust to compel the appellant to accept the deed and pay the $3,000, in the condition in which the property was on said 22d day of April, 1882, with reference to the said encumbrances. The pretended parol understanding between the parties at the time the agreement was entered into, in the most favorable light, is very inconclusive. If there had been any understanding that the purchase price was to be applied to the discharge of the said mortgages, it ought to have been pleaded; but even then it is quite doubtful whether the court could, in view of the fact that the bargain between the parties was in writing, have attached any importance to it. Chancellor Kent once said that a contract could not rest partly in writing and partly in parol, and the experience of mankind has shown that the rule is a very good one indeed. I am of the opinion that the decree appealed from should be reversed, and the complaint dismissed.

WALDO, C. J., absent.