Argued May 12, 1954, original decree as amended by decree of July 21, 1953, affirmed as modified; amended decree of September 18, 1953, reversed; writ of mandamus dismissed; suit remanded . September 22, 1954

CAVENY *v.* ASHEIM ET AL. and THE
TRAVELLERS INSURANCE COMPANY
STATE OF OREGON EX REL. ASHEIM ET AL. *v.*
PETERS
274 P. 2d 281

*Jay E. Jordan*, of Portland, argued the cause for appellants and petitioners-relators Bernard Asheim and Gable Park, Inc. With him on the briefs were Hickson and Dent, of Portland.

*Scott M. Kelley*, of Portland, and *James K. Gardner*, of Hillsboro, argued the cause for respondents. With them on the brief were Kelley and Kelley, of Portland.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN, LUSK, BRAND and PERRY, Justices.

WARNER, J.

This matter is unique in that it brings for our consideration as one matter two appeals and a petition for a writ of mandamus, all springing from the same case and here consolidated for argument and final disposition.

The salient facts requisite for an understanding of the instant controversy arise out of a contract made on August 18, 1948. It was an agreement for the sale and purchase of residential property in an

area known as Gable Park in Washington county. The purchasers were Ednamae F. Caveny, plaintiff in the suit hereinafter referred to, and her now deceased husband, Kasper P. Caveny. They went into immediate possession, notwithstanding that certain work remained to be done by the seller on the dwelling. The defendant Gable Park, Inc., a corporation, was the record owner and seller. The defendants Bernard Asheim and William C. Robison were copartners doing business as Robison Realty Co., and as realty brokers were agents for Gable Park, Inc., in negotiating and closing the sale of the property to the Cavenys. Asheim of the partnership was also president of Gable Park, Inc.; and another defendant, The Travelers Insurance Company, a corporation, was the owner and holder of a note executed by the defendant Gable Park, Inc., in favor of the insurance company for the sum of $15,000, payable in monthly installments, and secured by a mortgage which was a first lien upon the property purchased by the Cavenys.

The agreement of the seller for which plaintiff seeks specific performance is comprehended within a document denominated an "Earnest Money Receipt", the pertinent portions of which are as follows:

"RECEIVED OF Kasper P. Caveny and Edna-mae F. Caveny H & W hereinafter mentioned as the purchaser, the sum of Three Thousand and 00/100 ($3,000.00) Dollars as earnest money and in part payment for the purchase of the following described real estate situated in the City of —— County of Washington, State of Oregon, to-wit: Lot 3 Gable Park to be completed as per specifications and to include landscaping, which we have this day sold to the said purchaser for the sum of Twenty Eight Thousand Five Hundred and 00/100 ($28,500.00) Dollars on the following terms, to wit:

The sum of $3,000 as hereinabove receipted for; and Ten Thousand and 00/100 on or before Sept. 10, 1948 and Fourteen Thousand Five Hundred Dollars upon acceptance of title and delivery of deed; balance ($1,000.00) payable upon acceptance by purchaser on completion.

"A title insurance policy from a reliable company insuring marketable title in the seller is to be furnished the purchaser forthwith at seller's expense * * *.

"* * * * *

"The property is to be conveyed by good and sufficient deed free and clear of all liens and encumbrances to date except zoning ordinances, building and use restrictions, reservations in Federal patents, easements of record and no exceptions. * * * Incumbrances to be discharged by owner may be paid at his option out of purchase money at date of closing."

In the interest of clarity we will reiterate certain provisions of the agreement which contribute to the divergent viewpoints.

The seller covenanted to deliver a marketable title free and clear of all liens and encumbrances. A building on the premises was to be completed by the seller and the property was to be landscaped. The last payment on the purchase price, except for $1,000, was to be made "upon acceptance of title and delivery of deed" and the reserved $1,000 referred to was "payable upon acceptance by purchaser on completion." All but the $1,000 had been paid on the purchase price by October 1948.

The defendant Gable Park, Inc., having failed to secure a release of the mortgage lien of the insurance company or deliver plaintiff a deed, plaintiff brought a suit for specific performance on October 24, 1952, and, among other things, sought to have the defendants

Robison and Asheim declared to be trustees for the sums of the purchase price which were paid to them by the purchasers and which, plaintiff says, should have been applied by the defendants to the extinguishment of the mortgage lien.

After trial a decree was entered on July 8, 1953, wherein the court found for plaintiff. It directed specific performance of the contract and delivery of a deed as required by the sales agreement. It also required plaintiff to pay $800 into court for payment by the clerk to the defendants Asheim, Robison and Gable Park, Inc., upon receipt by the clerk of a satisfaction of the insurance company's mortgage.

On July 21, 1953, the court made and filed an amended decree which in effect added to the former decree a provision declaring that the three defendants last above named were trustees of the money received from the purchasers for the purpose of paying the insurance company.

On September 4, 1953, the defendants Asheim and Gable Park, Inc., gave notice of appeal from the decree of July 8 and the amended decree of July 21. That proceeding we will hereinafter refer to as the first appeal.

Thereafter, on the 18th day of September, 1953, the court entered a further or third amending decree. This determined the extent of the trust monies held by the defendants Asheim, Robison and Gable Park, Inc., to be $11,856.04. This was the amount then due on the insurance company's mortgage. This last decree also gave plaintiff a personal judgment against the three named defendants in the same amount, i.e., $11,856.04. Plaintiff's motion, which resulted in the last amended decree, asked for this personal judgment as "alternative relief", but the amended decree does

not so describe or limit it. All decrees subsequent to the first one were entered without notice to defendants.

On September 19 and 21, 1953, executions were issued on the judgment and decree as amended on September 18. These were promptly followed by motions of the defendants Asheim and Gable Park, Inc., to vacate the last decree and to quash the executions issued thereon. These motions were denied by the court's order of September 29.

On November 18, 1953, the same two defendants heretofore appealing filed notice of appeal from the amended decree of September 18. This proceeding we hereinafter refer to as the second appeal.

The third matter stemming from the Caveny suit in this court is the petition for a writ of mandamus filed in this court in December 1953 by the defendants Asheim and Gable Park, Inc., against the judge of the circuit court of Washington county directing him to vacate the decree dated September 18, 1953, and to quash all writs of execution issued thereunder. To the return made to the alternative writ, the petitioners demurred.

The issues are few and the facts are simple. The parties are in accord as to the amounts paid upon the purchase price. They agree that the balance of $1,000 is withheld by plaintiff to insure completion of the house. The contract so indicates, and the testimony of the president of the vendor corporation confirms, that the Cavenys as purchasers were to have a title free and clear of encumbrances. There is no dispute that the mortgage lien of The Travelers Insurance Company has never been released of record. The principal difference between the parties arises from whether the house has been completed in accordance

with the specifications. The defendants claim that it has. The plaintiff asserts that it has not been completed in several particulars. Her main contention is that a third coat of paint was never applied on the outside. Although she alleges other deficiencies, the lower court found that the vendor's default was in the failure to apply the paint and allowed an abatement to plaintiff for that reason. The defendants contest that allowance.

Notwithstanding the relative simplicity of the issues, the real controversy centers on the character and extent of the relief which plaintiff should be accorded in her suit for specific performance. Our task in making this determination is materially complicated by the fact that the court made three separate decrees, hereinabove referred to. The last two each modify the one immediately preceding it.

The first question for solution is whether or not the circuit court had jurisdiction to enter the amended decree of September 18. This challenge is raised by the second appeal and is also made the ground for the relief sought by the petition for the writ. If resolved against the lower court, then the matters raised by the second appeal are concluded and the petitioners will not be entitled to a peremptory writ according them the relief which they seek by their petition.

### The Second Appeal

We have already noted the substance of the decrees of July 1953. These July decrees, taken together, furnish the basis for the first appeal. At this point, however, we will consider only the third and last decree as entered by the lower court on September 18, 14 days after notice of appeal from the July decrees

had been served and filed. This later amendment, as we have observed, fixed the amount of the trust monies held by the defendants Asheim, Robison and Gable Park, Inc., at $11,856.04 and gave plaintiff a personal judgment against the last named defendants in the same amount.

This last decree not only provoked the application for writ of mandamus but also furnished the basis for the second appeal. The question presented by the second appeal is, as we have said, solely jurisdictional. It is: Did the lower court have the authority to amend the July decrees in the manner and for the purposes for which the amendment was made, after the appellants had given notice of appeal from the July decrees?

The appellants argue that this court obtained exclusive jurisdiction with reference to the July decrees upon the filing of the notice of appeal therefrom on September 4 and that the decree of September 18 in modification was an absolute nullity because the circuit court had lost authority to make the same.

The plaintiff takes the novel position that under ORS 19.040 ''A notice of appeal to the Supreme Court does not stay proceedings in the Circuit Court, unless: (a) Supersedeas bond is filed; (b) Circuit Court orders a stay; [or] (c) Supreme Court orders a stay.'' Her argument is that the defendants have not obtained either a stay order or a supersedeas bond, and it therefore follows that since ''The decree as finally amended was within the term of court * * * the Circuit Court had power to amend its decree even though an appeal was pending.'' It is apparent that plaintiff has misconceived the effect and scope of a supersedeas or a ''stay or proceedings''.

At common law a writ of error operated per se

as a supersedeas and prevented the issuance of execution to enforce the judgment, and the same effect was also given to an appeal in chancery. See *Helms Groover & Dubber Co. v. Copenhagen,* 93 Or 410, 415, 177 P 935. Today our statutes (ORS 19.030 to 19.050) require that, in the absence of an order from the court, in all but a few enumerated cases a sufficient undertaking must first be filed before the judgment or decree is superseded. *Blair v. Blair,* 199 Or 273, 285, 247 P2d 883, 260 P2d 960; *In re Workman's Estate,* 156 Or 333, 386, 65 P2d 1395, 68 P2d 479. As we said in *Sakraida v. Sakraida,* 192 Or 217, 222, 217 P2d 242, 233 P2d 762, "the only purpose of a stay bond is to 'stay the proceedings' in the court below."

■ The office of a "stay of proceedings" was early defined in this state as being tantamount to a writ of supersedeas, "the effect of which is to suspend the enforcement of a judgment until it can be reviewed on appeal." *State ex rel. v. Small,* 49 Or 595, 598, 90 P 1110; 40 Words & Phrases 116.

■ We find no merit in plaintiff's thesis that in the absence of a supersedeas bond or stay order, the circuit court, if acting in term time, enjoys a continuing and unlimited authority to modify or amend a previously-given judgment or decree after a disappointed party has given notice of appeal therefrom. In so saying, however, we recognize that the lower court does have some power to make certain corrections and changes after notice of appeal has been given; but this right is, as we will later see, a limited one which in proper cases can be exercised notwithstanding the character of the appeal bond filed or the existence or non-existence of a stay order. The question here is thus narrowed to whether or not the lower court had jurisdiction to amend its July decree to the extent attempted

by the last or September decree, that is, so as to alter substantially the rights and equities of the parties.

■ The pertinent statute (ORS 19.030[3]) provides that "Upon notice of appeal being given, and entered in the journal of the court or filed with the clerk, as the case may be, the appellate court shall have jurisdiction of the cause and not otherwise." See *Pond v. Jantzen Knitting Mills*, 187 Or 697, 700, 180 P2d 115. However, we find in *Cranston v. Stanfield et al.*, 123 Or 314, 319, 261 P 52, that the mere fact this court has acquired jurisdiction of the appeal does not deprive the lower court of all jurisdiction over its own record. In support of this proposition, we adopted with approval in the Cranston case the following statement found in 2 RCL, Appeal and Error § 95, reading:

> "'When an appeal with a *supersedeas* or stay has been taken the jurisdiction of the trial court is suspended as to all matters necessarily involved in the appeal. Accordingly, pending an appeal, the lower court, as a general rule, has no power to allow amendments of the proceedings. For example, pending an appeal from an order denying a motion to quash an execution, the court has no power to allow an amendment of the execution. * * * An appeal or writ of error does not, however, deprive the trial court of all power to act pending the appeal. Thus, though there are cases to the contrary, it is generally held that the pendency of an appeal or writ of error does not deprive the trial court of the power to correct its record so that it will speak the truth and truly set forth the proceedings as they actually occurred. Nor does the pendency of an appeal deprive the lower court of power to correct a mere clerical error in the entry of the judgment, though the correction of the error deprives the appellant of his ground of appeal.'"

Mr. Justice ROSSMAN in the Cranston case analyzes the application of the foregoing rule as it was made

in *Helms Groover & Dubber Co. v. Copenhagen,* supra; *St. Helens Lumber Co. v. Evans,* 90 Or 71, 175 P 612; *Oregon-Wash. Co. v. School Dist. No. 25,* 89 Or 7, 173 P 261; *Brewster v. Springer,* 79 Or 88, 154 P 418; and *State ex rel. v. Estes,* 34 Or 196, 51 P 77, 52 P 571, 55 P 25, representing the leading cases in this jurisdiction treating with the power of the lower court to make changes in its record after this court has acquired jurisdiction of an appeal therefrom. From that analysis, as well as the holding in *Cranston v. Stanfield et al.,* supra, we are taught that the reason for continuing authority in the lower court to correct its record to conform to the truth is that "it is deemed wiser to correct a record than to reverse the case and thus cause the parties to set in motion from the beginning the ponderous machinery of a new trial." *Cranston v. Stanfield et al.,* supra, at page 321. Also see *Oregon-Wash. Co. v. School Dist. No. 25,* supra, at page 9.

Without departing from the rule laid down in the Cranston case with respect to the lower court's power to correct its record and without criticizing the court's analysis of *Oregon-Wash. Co. v. School Dist. No. 25,* supra, as made in the Cranston case, we deem it pertinent to note a unique condition prevailing in the Oregon-Washington Co. case not present in the other cases referred to by Mr. Justice ROSSMAN. In that case the defendant appellants moved in the lower court to vacate the findings and resultant adverse consent decree. Pending a decision on appellants' motion, the school district perfected its appeal. Subsequently, but prior to the hearing of the appeal, the trial court ruled favorably for defendants on their motion, set aside its decree and entered another decree in lieu thereof which tended to show that it also had been authorized by consent. The effect of the second decree

apparently did not enlarge or diminish any rights or remedies accruing under the first vacated decree but merely made "more concise directions about the extent of the proposed [school] building and limiting the cost thereof to the sum of nine thousand dollars [the same amount found in the first decree]." (89 Or 8)

It should be noted that although we find the court in *Oregon-Wash. Co. v. School Dist. No. 25,* supra, entering a later decree in place of its original decree upon which an appeal was then pending and, mechanically at least, following the pattern of the lower court in the instant matter, yet these marked differences distinguish the earlier case from the one at bar: first, the net result of the court's action in the Oregon-Washington Co. case was to make the second decree conform to what the parties had actually and previously consented to, in short, to conform to the truth; and, second, the correcting decree was made with the consent of the parties, rendering the first appeal academic and moot. Following the rule set forth in *Brewster v. Springer,* supra, we dismissed the defendants' appeal, thus declining to listen to an appeal from a decree vacated in response to appellants' own motion and well knowing we could do no more to correct the situation than had already been accomplished by the trial court.

■ As far as we are presently advised, this court has not yet recognized a right in the circuit court to change any part of its record after this court has acquired appellate jurisdiction in a given matter, except for the express purpose of making its record speak the truth as to matters and things transpiring prior to the entry of its original judgment or decree. Such is the tenor of *Cranston v. Stanfield et al.,* supra, and we adhere to it.

*State v. Kleckner et al.,* 116 Or 371, 373, 239 P 817, 240 P 1115, gives emphasis to that conclusion. In the Kleckner case, after judgment and while the appeal therefrom was pending in this court, the plaintiff caused a second summons and complaint to be served on each of the defendants. A special appearance was made to quash this later service on the ground that the lower court had lost jurisdiction by reason of the pending appeal, notwithstanding a judgment was again entered by the lower court having the same import as that previously rendered. In disposing of this matter Mr. Justice BELT said:

"Is the second judgment of any force or effect, based upon service of summons after appeal from the first judgment had been perfected? We think not. No doubt the second summons was issued in the hope of curing what was then recognized to be a fatal error. However, after the appeal was perfected, the lower court lost jurisdiction of the cause and could take no step to defeat appellants of the right to prosecute their appeal with effect. It is not a question of correcting the record so as truly to set forth the proceedings as they actually occurred: Helms Groover & Dubber Co. v. Copenhagen, 93 Or. 410 (177 Pac. 935); 2 R.C.L. 120. A recognition of any other rule would lead to uncertainty and confusion in litigation, and in effect would enable the lower court to review its own proceedings * * * [citing cases]."

█ The effect of the amending decree of September 18, 1953, was not to correct the court's record to conform to the truth but to enlarge plaintiff's relief beyond the bounds of her pleadings and beyond the court's right to do so as a matter of law. The last decree, as has been pointed out, attempted to give plaintiff additional and further relief by declaring the defendants Asheim, Robison and Gable Park, Inc.,

to be trustees of the sum of $11,856.04 for the use and benefit of The Travelers Insurance Co. It also gave plaintiff a personal judgment against these defendants for the same amount. The decree of September 18 is void.

### The Application for Writ of Mandamus

We now give attention to the petition in mandamus. of Bernard Asheim and Gable Park, Inc., two of the defendants in the suit for specific performance. This was filed in this court on November 5, 1953, 13 days prior to giving notice of the second appeal.

The relief sought by the mandamus proceeding was for the issuance of a peremptory writ directing the circuit court of Washington county to vacate the decree and judgment entered on September 18, 1953, and requiring it to quash all executions issued pursuant thereto. The grounds therefor are identical to those assigned as error for the entry of the second amended decree. In this court the argument in the mandamus matter was predicated upon petitioners' demurrer to the defendant circuit court's return to the alternative writ.

The conclusions which we have reached with respect to the second appeal, resulting in a declaration that the decree of September 1953 is void for want of jurisdiction, render the pending application for a peremptory writ of mandamus moot in that the same results sought by the writ are achieved in that holding. Moreover, as we now review the record, we are impressed that we improvidently took jurisdiction of the application for the writ in the first instance, it being then demonstratable that the petitioners had an adequate remedy at law for the various matters which occasioned the application for mandamus, one of them

being the availability of supersedeas. The writ will, for these reasons, be dismissed.

## The First Appeal

Notice of the first appeal was filed on September 4, 1953. It was an appeal from the original decree entered in this cause on July 8, 1953, and also the amending decree of July 21, 1953.

The decree as amended on July 21 is, except as hereinafter noted, identical with the decree of July 8. The clauses of the decree in its amended form which are challenged by the notice of appeal read:

"1. That the agreements set forth in the Complaint on file herein and proved in this cause, be specifically performed; and that the defendants Bernard Asheim, William C. Robison and Gable Park, Inc. cause said mortgage to be paid and Gable Park, Inc. cause to be executed and delivered to the plaintiff a good and sufficient conveyance, free and clear of encumbrances in fee simple absolute containing the usual covenants and warranty of the following described premises: Lot Three (3) Gable Park, in the County of Washington and State of Oregon, and also deliver a title insurance policy on said premises to the plaintiff as provided by said agreements.

"2. That the Plaintiff pay to the Clerk of this Court the sum of $800.00 to be paid over to the defendant, Gable Park, Inc. when a satisfaction of mortgage made and executed by The Travelers Insurance Company has been delivered to said Clerk for recording, when said deed has been delivered to the plaintiff and when the costs and disbursements have been paid to the plaintiff.

"* * * * *

"4. That William C. Robison, Bernard Asheim and Gable Park, Inc. are hereby declared to be trustees of the money paid to them by the plaintiff and her husband for the purpose of paying The Travelers Insurance Company."

Clauses 3 and 5 of the decree are here omitted for the reason that they are expressly excepted from the notice of the first appeal. The amendments made to the decree of July 8 by the decree of July 21 and reflected above were (a) the addition of the words "cause said mortgage to be paid" in Clause 1 and (b) the addition of Clause 4 as a new provision. We shall hereinafter refer to both July decrees as the first decree.

We will now consider the assignments of error directed against the first decree as it appears above.

The record indicates, and it was so found by the lower court, that the purchasers had paid to the appellants the sum of $27,500 upon the agreed purchase price of $28,500. The balance of $1,000 was withheld, as we have noted, because of a dispute as to whether or not the house had been completed in accordance with the specifications. This prompts us to revert again to the contract and note that the schedule of payments contemplated that the last payment of $1,000 was payable only "upon acceptance by purchaser on completion."

Prior to the institution of the instant suit, the seller had never attempted, nor even offered, to fulfill its part of the bargain by discharging the record encumbrance in favor of The Travelers Insurance Company, nor did the seller ever tender a deed as required by ORS 19.040(2) as a step in perfecting his first appeal. We again refer to the sales agreement and point to that portion thereof which mandated the seller to deliver an acceptable title and deed *coincident* with receipt from the purchasers of an amount of money representing a total payment of $27,500 on the purchase price. That stage in the transaction was reached on the part of the Cavenys as purchasers

some time in October 1948, nearly four years before this suit for specific performance was brought.

Appellants' principal argument runs thus: The complaint is limited to a suit for *complete,* as against *partial,* specific performance. The court, in order to give *complete* specific performance, has followed the terms of the contract literally and directed, among other things, the seller to "cause said mortgage to be paid". This, appellants say, but without citation to authority, is "unheard of in the law" in that it necessitates a direction to pay money to a third person. The appellants assert that if this premise is correct, then, as an alternative, the decree must necessarily be one for partial specific performance, i.e., for delivery of the deed and with judgment to compensate for the continuing presence of the unsatisfied encumbrance; but, they argue, the complaint is insufficient to support such a compensatory grant because of the want of an allegation warranting such form of money relief. However, the appellants continue, should the court hold the complaint sufficient for that purpose, i.e., partial specific performance and compensation, then plaintiff is still not entitled to such compensatory relief because the Cavenys as purchasers had prior knowledge of the existence of the insurance company's mortgage. We think appellants' argument is without merit when applied to the facts in the instant matter.

In Maupin, Marketable Title to Real Estate 3d ed, 523, § 193, we find it said that "If the objection to the title be one which the vendor can remove, he will be required to remove it." Here the objection springs from the unpaid mortgage to the insurance company. It is one that the vendor-mortgagor can remove by payment. The mortgagee has long since indicated its willingness to accept funds "to pay the

\* \* \* loan in full without penalty with interest computed to the day of payment.'' Moreover, plaintiff and her husband more than four years ago placed in the hands of the appealing defendants as payments on the purchase price far more money than necessary to release the lien of the insurance company's mortgage.

The authority for the Maupin statement rests upon *Ogooshevitz v. Arnold,* 197 Mich 203, 163 NW 946. In that case the vendor was required by a decree of specific performance ''to make clear the record title'' by appropriate proceedings because it was within the power of the defendants to do so, citing *Brin v. Michalski,* 188 Mich 400, 154 NW 110. ''Appropriate proceedings'' in the Ogooshevitz case necessitated a probate to bar any potential claims of creditors of a prior decedent owner of the title.

The rule that makes it the duty of a vendor to clear his title in accordance with his obligations to the vendee, when the encumbrance is one that can be removed, is a precept that equity will enforce by specific performance, even when the mandate requires payment of money to a third person. It is made even more evident in *Brin v. Michalski,* supra, relied upon as the controlling authority in the Ogooshevitz case. There the defendants Michalski were the vendors. At the time of their sale agreement with the vendee (Mrs. Brin's assignor) the Michalskis as vendors were purchasing the property under a conditional sale contract. To complete performance on their part, all that remained to be done was to perfect their title and deliver a deed. The court held that although the defendants did not hold the legal title, and had only a contract for the purchase of a tract of land on which more than half the purchase price was paid, specific performance

of their agreement to sell the parcel might be enforced when, as there, it was within their power to obtain title. Thus in the Brin case the decree compelled the Michalskis, as plaintiff's vendors, to pay money to a third person, namely, one Skotzke, vendor under their contract, to complete their purchase of the parcel which they had in turn contracted to sell to one Feldman, a prior owner of the purchaser's interest later assigned to Mrs. Brin. Also see *Litzau v. Shimkewich*, 286 Mich 92, 281 NW 549.

The same principle is applicable to the liquidation of mortgage liens when the vendor has covenanted to convey property, as here, free and clear of encumbrances. This is so recognized in Maupin, Marketable Title to Real Estate, supra, where it is said, at page 524: "The purchaser may, of course, file his bill requiring the vendor to remove an encumbrance from the premises, unless the purchase was made subject to encumbrances." Also see *Bennett v. Abrams*, 41 Barb (NY) 619, 625.

No compensatory relief was accorded plaintiff by the first decree; but, notwithstanding, we think it is appropriate to give the subject some attention here. The lower court was evidently impressed with the need therefor when it granted a money judgment against the defendants by the amending decree of September 1953. We, too, feel that there may be a need therefor and deem it in order to challenge appellants' assertion that the lower court cannot grant such relief under the pleadings as drawn; and we intend to provide later a means therefor as a matter of alternative relief.

By thus challenging the sufficiency of the complaint, appellants display a misconception of the nature of equitable compensation available to a vendee. They read equitable compensation, a species of substitute

relief sometimes awarded in suits for specific performance, as synonymous with damages for breach of contract given in law. Although similar in character, they are not in fact identical remedies; they arise from different motives and are based upon different principles.

■ We give heed to what is said in Pomeroy, Specific Performance of Contracts 3d ed, 902, § 436. It reads:

" * * * relief of damages is only given in exceptional cases, and purely as ancillary to the equitable remedy, when the court had already obtained jurisdiction of the case by virtue of its equitable powers, and determines to do full justice to the party in one cause, instead of compelling him to commence a separate litigation in a court of law. 'Compensation,' on the other hand, using the word in its special and restricted meaning, is an ordinary and constant incident of the remedy of specific performance, a part of the general course of administering the doctrines of equity, and is to be regarded, not as an independent and separate award of damages, but rather as a condition upon which the relief of specific performance is granted at all, or as a modification of that relief, so that it may be adapted to the circumstances of the case and the equities of the parties. Although the amount of compensation may be ascertained upon somewhat the same basis as that upon which damages would be assessed for the same loss, yet the motives and principles upon which compensation is allowed are wholly different from those upon which damages are awarded. * * * "

Reference to the foregoing statement from Pomeroy is made by Mr. Justice BAILEY with approval in *Van Horn Construct'n Corp. v. Joy et ux.*, 186 Or 473, 481, 207 P2d 157.

■ Compensation as incidental relief is especially

appropriate when complete specific performance is not available; and as an allowance to be made for any deficiency as to the quantity, quality, or description of the property, when it is clear that jurisdiction properly attaches in equity, compensation flows and is inseparable from the proper relief. 2 Story, Equity Jurisprudence 14th ed, 476, § 1085; Pomeroy, Specific Performance of Contracts, supra, 900-902, §§ 434-435; Waterman, Specific Performance of Contracts, 699, § 499; 49 Am Jur 123, Specific Performance § 105; 81 CJS 448, Specific Performance § 21(2a).

The rule as thus announced by the foregoing text writers cited has been approved in *Van Horn Construct'n Corp. v. Joy et ux.,* supra, at pages 480 et seq. Also see *Walker v. Mackey et al.,* 197 Or 197, 209, 251 P2d 118, 253 P2d 280; *Bartholomew v. Bason,* 188 Or 550, 552, 214 P2d 352.

■ In Fry, Specific Performance 6th ed, 587 §§ 1267-1268, under the subject of "Compensation", is found an excellent statement of the rule as made in *Barker v. Cox,* 4 Ch D 464, 469 (1876) reading:

"'If * * * a man enters into a contract to sell something, representing that he has the entire interest in it, or the means of conveying the entire interest, and receives the price of it and does not perform his contract, then the other party to the contract, who has parted with his money or is ready to pay his money, is entitled to be placed in the same position he would be in if the contract had been completed; or, if not, by compensation to be placed in the same position in which he would be entitled to stand.' "

Fry then proceeds to observe that "It is obvious that, in this proceeding, the Court is executing the contract, *cy pres* * * *."

220

■ The question of the sufficiency of the prayer of plaintiff's complaint in the instant suit is answered by Waterman, Specific Performance of Contracts, supra, 702, § 500, as follows:

"* * * When compensation is sought by the vendee, although it is better for him to state his grounds therefor in his pleading, yet he is not obliged to do so, but may obtain compensation at any time during the investigation before performance, though the prayer of his bill and the decree rendered at the hearing do not allude to compensation. * * *"

Also see Fry, Specific Performance, supra, 567, § 1211.

In *Walker v. Mackey et al.*, supra, the bill for specific performance contained a prayer similar to that in the instant case. Finding enforcement of the contract for the sale of real property impossible due to a state highway right-of-way across the land, the court awarded plaintiff complete compensation in lieu of enforcement.

■ It should be remembered that specific performance is not a matter of right but depends upon the exercise of the chancellor's discretion. *McDonough v. Southern Or. Mining Co.*, 177 Or 136, 155, 159 P2d 829, 161 P2d 786, 164 ALR 788. It follows as a self-evident corollary that if a court of equity is vested with the power to refuse complete performance in specie, it can with equal propriety grant relief in the form of partial specific performance and compensation or abatement when and where specific performance would work a hardship or prove impracticable or impossible. 81 CJS 783, Specific Performance § 163(d).

■ The propriety of granting compensatory relief when it appears proper in a given case is recognized in *Van Horn Construct'n Corp. v. Joy et ux.*, supra,

where this court cites with approval, at page 487, the following statement from *Peeler v. Levy,* 26 NJ Eq 330:

> " ' * * * Compensation is to be awarded, when it appears, from a view of all the circumstances of the particular case, it will subserve the ends of justice * * *. No inflexible rule can be adopted applicable to all cases, but each case must be decided on its own special facts. * * *,' "

We are content that, notwithstanding the absence of a prayer for partial performance and compensation in lieu of complete specific performance, we can and should, in view of the status of the record, here give opportunity to apply such relief in the lower court, provided plaintiff is not otherwise barred by the law from enjoying such a benefit.

Appellants contend that is precisely plaintiff's position. They say in substance that even if the court can grant her compensatory relief, the pleadings being as they are, the court is nonetheless barred from so doing by the fact that plaintiff and her husband as purchasers had knowledge of the mortgage lien in favor of The Travelers Insurance Company when they made their contract with Gable Park, Inc., and that such knowledge is a barrier to compensatory relief and, we add, if true, would bar a decree for performance in specie.

A statement of the general rule upon which appellants reply is found in *Wetherby v. Griswold,* 75 Or 468, 475, 147 P 388. There this court quotes with approval the following from 36 Cyc 742: " 'If the purchaser at the time of entering into the contract was aware of the defect in the vendor's interest or title, or deficiency in the subject-matter, he is not, on suing for specific performance, entitled to any compensation or abatement of price.' " To the same effect

also see Pomeroy, Specific Performance of Contracts, supra, 912, § 442; Waterman, Specific Performance of Contracts, supra, 714, § 506; Fry, Specific Performance, supra, 588, § 1271; 49 Am Jur 125, Specific Performance § 106; 81 CJS 450, Specific Performance § 21.

Among the cogent and persuasive reasons assigned for the rule as stated by the above authorities is that the sale was intended by the parties to include only such an interest in the property as the vendor possessed and, if encumbered, it is presumed that in fixing the purchase price, the existence of the encumbrance was taken into consideration.

However, the rule upon which appellants place such sturdy reliance is not as harsh and inflexible as appellants would have us believe. It has some salutary exceptions. One is particularly applicable here.

▇ Whether the plaintiff and her husband as purchasers were actually cognizant of the existence of the insurance company's mortgage, or any other encumbrance, at the time they entered into the purchase and sale agreement with the owner becomes, in our opinion, an immaterial circumstance in view of the facts prevailing in the case at bar.

The weakness of appellants' argument for application of the rule lies in the fact that here the contract between the parties expressly provides that the owner will convey to the Cavenys "by good and sufficient deed free and clear of all liens and encumbrances to date except zoning ordinances * * *." We also read, "Incumbrances to be discharged by owner may be paid at his option out of purchase money at the date of closing." Asheim, president of the defendant owner, Gable Park, Inc., by his testimony indicates that the title to the Cavenys was to be clear of the insurance company's mortgage.

The agreement between Gable Park, Inc., and the Cavenys precludes any need for speculation as to whether or not the Cavenys with their knowledge of the mortgage on August 18, 1948 (if, in fact, they had such knowledge) assumed the insurance company's mortgage as a part of the purchase price so as to preclude them from compensatory relief in a suit for specific performance.

■ Under the circumstances here present, we think the applicable and controlling rule, which is in the nature of an exception to the general rule depended upon by appellants, is well stated in Maupin, Marketable Title to Real Estate, supra, 207, § 85-a, and we unhesitatingly adopt it as our own. It reads:

> "If the written contract between the parties expressly provide that the vendor shall convey the premises free from incumbrances, it is of course immaterial that the purchaser had notice at the time of the contract that there was an incumbrance on the property. He has a right to insist upon the terms of his contract. It is conceived, however, that such an agreement should be limited to those incumbrances which the vendor has the right to remove, such as a mortgage, judgment, or other pecuniary lien. If the incumbrance be of a kind which the vendor cannot remove as a matter of right, such as an easement, it is not to be presumed that the purchaser, knowing the existence of the easement, intended the insertion of a vain provision in the contract."

*Sanford v. Wheelan,* 12 Or 301, 306, 7 P 324, was a suit for specific performance of a contract with a provision similar to the one obligating the vendor in the case at bar, that is, it imposed on Sanford, the respondent vendor, the duty to convey to Wheelan, the appellant vendee, "by a good and sufficient warranty deed of release and quit claim, free from all

encumbrances''. The property in that case was burdened with several mortgage liens. There, as here, vendor's counsel urged the same general rule of exoneration that appellants here stress as a bar to plaintiff's right to compensation in this matter. At page 307 this court said:

"* * * the respondent's counsel claims that the appellant was cognizant of the fact of the encumbrances when he entered into the contract. The evidence is conflicting upon that subject; but suppose it preponderates in favor of the respondent, and that he only stipulated to give a deed containing a covenant against encumbrances, that would not relieve him from the obligation to convey a pure title to the property. His agreement to make a deed containing such a covenant was in effect an agreement that the property should be disencumbered. A covenant against encumbrance is an assurance that the property, at the time of the ensealing and delivery of the deed, is then free therefrom. That character of the covenant is personal, and relates to the time of the execution of the conveyance, and is immediately broken if any encumbrance exists. The fact that the appellant knew of the existence of the mortgages may have been, as suggested by his counsel upon the argument, the reason and object of the stipulation in the agreement, that the respondent should give a deed free from all encumbrances. * * *''

In the words of Maupin, Marketable Title to Real Estate, supra, we find that the contract between the parties expressly provided that the vendor should convey the premises free from encumbrances; and it was, therefore, immaterial whether the Cavenys as purchasers had notice at the time of the contract that there was an encumbrance on the property.

The amending decree of July 21 was responsible for the fourth clause of the first decree now under

review. The appealing defendants and the defendant Robison are there declared. trustees "of the money paid to them by the plaintiff and her husband for the purpose of paying The Travelers Insurance Company." The appellants very properly assert that there is no evidence of an express trust. It is therefore presumed that the claim of trust is predicated upon a theory of resulting trust; but there is no proof that money was delivered to the defendants for any purpose other than to liquidate the purchasers' obligation under the sales agreement. The payments were not conditioned or limited in any manner. Indeed, the contract by its terms makes it optional with the seller whether to use the purchase money for the purpose of releasing any encumbrance which the seller has covenanted to clear. The most persuasive reason for discarding the declaration of the existence of a trust for the use and benefit of the insurance company is plaintiff's earnest representation that neither she nor her husband had any knowledge of the existence of the insurance company's mortgage until after they had completed payment of $27,500 on the purchase price in October 1948. We are of the opinion that neither the evidence nor the pleadings warrant the creation of a trust for the benefit of the insurance company as to any part of the money paid by the purchasers to the defendants or either of them and that Clause 4 should be stricken.

■ We take notice of appellants' challenge to Clause 2 of the first decree wherein the plaintiff is directed to pay the sum of $800 to the clerk of the court for ultimate delivery to the defendant Gable Park, Inc.; when that company has evidenced its compliance with the decree for specific performance by filing with the clerk the various instruments therein directed. The $800 referred to is the $1,000 due on the purchase price

and payable upon acceptance of the building "on completion" as per specifications. The deduction of $200 is withheld or abated to compensate plaintiff for the cost of the omitted coat of paint.

Whether the defendant owner was in default in this respect is a debatable question. Evidently the lower court was so persuaded, and we will accept its judgment, that Gable Park, Inc., was remiss in that particular; but a search of the record fails to reveal one iota of evidence, or any offer of evidence, upon which the lower court or this court can affirmatively conclude that such a third coat of paint would cost $1 or $1,000. We find absolutely nothing to justify the use of $200 or any other sum as the proper measure of abatement.

Indeed, the court at the conclusion of the trial expressed itself as being in a quandary on the point saying:

"The thing that is bothering the Court is what amount of that $1,000 that is being withheld, is still due from the plaintiffs to the defendants because there is considerable dispute as to whether there was a third coat of paint. That is the one big item. * * *

"I don't know just what way the Court can resolve that one proposition. * * *"

"* * * * *

"I don't know how the Court is going to determine that [meaning the cost of the paint job] from the evidence, in this case."

We think that as the record presently stands, there is no foundation for an abatement in the amount of $200, even though we concede that plaintiff is entitled to compensation for the unfinished painting job. That part of the decree will be stricken and the matter remanded to the lower court to take further evidence

as to the cost of this painting job; and thereafter plaintiff should be allowed an abatement for the insufficient paint job as appears to be warranted thereby.

Appellants press upon our attention several other matters of lesser import in challenge to the first decree. All have received our consideration. Some involve clauses of the decree from which no appeal is taken. The answers to certain alleged errors are comprehended within what we have hereinabove said with reference to other points raised.

Viewing the record in its entirety, we think the appealing defendants have dealt with plaintiff and her husband, as purchasers, in a very shabby and very inequitable manner. We realize, however, that we cannot devise a formula that will insure her against further outlays which may be necessary to circumvent a foreclosure threatened by the vendor's failure to meet its obligations.

Preliminary to our directions as to the modifications which the facts dictate should be made in the decree, we pause here to observe that we can foresee that the remedy of compulsory action to enforce the specific performance directed by the first clause of the decree by proceedings in contempt may prove fatuous or futile by reason of conditions not now known to the court or not yet arisen and, if permitted to stand as plaintiff's sole remedy herein, may result in greater financial loss to her, if, for example, the insurance company filed suit to foreclose its mortgage prior to the time the defendants had arranged to satisfy it.

Justification for an award of equitable compensation in the alternative follows when a court, in the exercise of its discretion, refuses enforcement in specie, because such enforcement would work a great hardship or would be useless or impracticable or would

involve difficulties. 81 CJS 783, Specific Performance § 163(d). Also see *Public Market Co. v. Portland,* 171 Or 522, 595, 130 P2d 624, 138 P2d 916; *Oregon Growers' Co-op Assn. v. Riddle,* 116 Or 562, 569, 241 P 1011. Such an award may be given in the alternative, i.e., defendant may elect either to comply with the decree and pay the compensation or to perform the contract himself, thus nullifying the mandate. *Hook v. Ross,* 1 Hen & M 310, 11 Va 318; 81 CJS 784, Specific Performance § 163(f).

Allowing compensation in furtherance of partial specific enforcement of the contract is perhaps best exemplified and distinguished from damages by the facts in the instant case. If the defendants are unable to complete their bargain by removing the encumbrance, it would be a vain thing for equity to coerce performance by personal process. Likewise, it might be unjust to award plaintiff a mere money judgment, leaving defendants exposed to unmerited hardship by plaintiff's failure to appropriate the proceeds to the contract. The defendant Gable Park, Inc., and such of the other appealing defendants as may be liable for the mortgage debt, would thus be subjected to a potential double liability, i.e., a judgment in favor of plaintiff and a like judgment for the same amount to the insurance company mortgagee in the event of a foreclosure. In order to maintain the contract rights inviolate, equity will apply the proceeds of the judgment itself, i.e., retain the money received on execution and pay it directly to the mortgage lienholder. If the obligors will not or cannot perform, equity, in extending its specific assistance, thus will perform the contract for them as far as it is able without altering the terms or obligations of the agreement.

We will, therefore, direct that the modified original

decree which follows provide that the circuit court may, in its discretion, enter an award of equitable compensation against the defendants upon application of the plaintiff or upon its own motion, reserving, however, to the defendants the right to perform specifically by securing a release of the lien of the insurance company's mortgage.

It is a situation which dictates the more or less complicated form of decree which we think necessary, made so by our conscious effort to avoid the possibility of subjecting the defendants to double liability in the event the court enters a judgment against them in lieu of relief in specie.

### Summary of Conclusions

In our opening statement we pointed out that this matter is mechanically unique in that it speaks to and disposes of three separate propositions, all springing from the same set of facts but here presented substantially as three appeals. We refer to the two appeals from the two decrees taken by defendants and their application for a writ of mandamus. This, we think, warrants in conclusion a recapitulation of our final judgments predicated upon the entire record now before us. These are:

1. That the decree of September 18, 1953, be vacated.

2. That the mandamus proceeding be dismissed.

3. That the first decree, that is, the decree of July 8 as amended by the decree of July 21, 1953, be affirmed as modified in the manner hereinafter indicated.

### Modifications of Original Decree

We can better simplify and clarify our thought with respect to what we deem the appropriate and

necessary changes in the original decree by setting them up here in more detail than would be ordinarily usual in a matter of this kind. We will refer to clauses as they are numbered in the decree of July 21. The modifications and changes which seem to be dictated are:

1. Leave Clauses 1, 3 and 5 as written.

2. After taking further testimony to determine the cost of painting plaintiff's house in accordance with the specifications, amend Clause 2 by requiring plaintiff to pay to the clerk of the court the sum of $1,000, the amount of the purchase price withheld to insure the vendor's compliance with the building specifications, less such amount as the court shall determine is the cost for such work, and less the amounts as shall be adjudged to plaintiff as costs and disbursements as directed by Clause 5 as above amended. The balance of said $1,000 then remaining shall be paid by the clerk to the defendant Gable Park, Inc., when the defendants named in Clause 1 have fully complied with the provisions thereof and, in addition thereto, have delivered to the clerk a properly recorded satisfaction of the mortgage lien of The Travelers Insurance Company; provided, however, if said mortgage has not been paid in full prior to the entry of a judgment against the defendants as hereinafter provided by Clause 4 as amended, then said funds shall be retained by the clerk and applied in the manner hereinafter directed.

3. After taking further evidence to determine the amount necessary to satisfy the lien, a new Clause 4 shall be substituted providing as follows: as an alternative measure of relief, if the defendants named in Clause 1 of the decree neglect or are unable to obtain a release of the insurance company's mortgage, the

plaintiff may at any time move for and, in the exercise of the court's discretion, secure a judgment against the defendants named in Clause 1 for compensation in lieu of the decree of specific performance insofar as it directs them to secure a release of the mortgage lien, said judgment to be in an amount equal to the aggregate of all payments, if any, theretofore made by plaintiff upon the debt secured by the mortgage, including interest from the date of each payment made by her, plus such amount as may then be owing upon said mortgage, principal and interest, plus the cost of recording the release and a title insurance policy; provided further that any money received by reason of any execution issued on said judgment shall be paid directly to the clerk of the circuit court of Washington county and shall be by the clerk, together with all monies paid into court pursuant to Clause 2 as amended, promptly disbursed as follows:

a. To the clerk for and on account of any costs necessarily incurred in carrying out the directions imposed by the provisions of the decree;

b. to plaintiff upon her judgment for costs and disbursements under Clause 5, if any part thereof remains unpaid after applying the monies received by the clerk under Clause 2 as amended;

c. to the payment of any unpaid balance due and owing upon the debt secured by said mortgage lien; and

d. to the defendant judgment debtors, as their interests may appear, any balance remaining after satisfying the insurance company's lien in full.

All amounts received by the clerk of the court under the decree and disbursed by him directly to the mortgagee and all amounts paid by defendants directly to the mortgagee shall be by the clerk credited

upon the judgment given under Clause 4 as amended against the defendants and in favor of the plaintiff.

Such a judgment for compensation may be entered by the court at any time on its own motion. It is further provided that any such judgment, whether entered on the motion of the plaintiff or by the court, shall reserve to the defendants the right to perform specifically by securing a release of the lien of the insurance company's mortgage; but such alternative privilege in the defendants shall be without prejudice to plaintiff's right to have an execution issue on such judgment as long as said mortgage is a lien upon plaintiff's property.

The suit is remanded for action necessary in conformance with this opinion. Costs in this court will be awarded to neither party.

LATOURETTE, C. J. (dissenting in part).

I agree with the opinion of the court in all respects save the modification of the decree below by providing for the entry by the Circuit Court of "an award of equitable compensation against the defendants upon application of the plaintiff" or upon the court's own motion. The plaintiff has not appealed. It is a firmly established rule in this state that the party who has not appealed cannot obtain here a modification favorable to himself of the decree from which the other litigant has appealed. See *Crumbley v. Crumbley,* 94 Or 617, 186 P 423, and cases cited. This is so whether the case be at law or in equity. *McCoy v. Crossfield,* 54 Or 591, 592, 104 P 423. That the court's decision grants a measure of relief to the plaintiff which she did not receive in the court below seems to me to be plain. I think, therefore, that the modification of the decree violates the rule and goes beyond the power of this court.

I am authorized to say that Mr. Justice LUSK concurs in this opinion.