No. 46,954

DeBauge Bros., Incorporated, *Appellee*, v. G. C. Whitsitt and Bernica R. Whitsitt, Appellants.

(512 P. 2d 487)

Opinion filed July 14, 1973.

*Joseph S. Davis, Jr.,* of Breyfogle, Gardner, Martin, Davis & Kreamer, of Olathe, argued the cause, and *O. R. Stites,* of the same firm, was with him on the brief for the appellants.

*Elvin D. Perkins,* of Emporia, argued the cause, and *Stanley G. Andeel,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, was with him on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: Defendants appeal from the trial court's order sustaining plaintiff's motion for summary judgment directing specific performance of a contract for sale of defendants' business.

Defendants are G. C. Whitsitt and Bernica R. Whitsitt, owners of the Emporia Coca Cola Bottling Company. In the fall of 1970,

Whitsitt was negotiating a sale of his plant and franchise rights with Robert Wagstaff of the Kansas City Coca Cola Bottling Company. He refused Wagstaff's proposal, considering the offered price too low. DeBauge Brothers, Inc., an Emporia corporation, contacted Whitsitt on December 11, 1970, and offered to buy the plant and franchise for $172,000. Whitsitt accepted, and De-Bauge's attorney prepared a contract for sale and presented it to Whitsitt the following day. After some changes suggested by Whitsitt, it was signed by the parties on December 17, 1970. The transfer and sale were subject to approval of the Coca Cola corporation, and Whitsitt agreed as part of the contract to make immediate application for that approval. Other terms of the contract provided for sale of real and personal property, franchise, and good will for $100,000. Inventory was not included in the sale price. DeBauge Brothers, Inc., agreed to employ Whitsitt and/or his sons as consultants for six years at $1,000 per month. The $72,000 to be paid for consulting services constituted the balance of the purchase price and the parties agreed to execute a separate contract setting forth in detail the terms of the consulting service. Payments on the purchase price were to be escrowed until Coca Cola approved the franchise transfer.

Whitsitt received a letter from Wagstaff on December 29, 1970, containing another offer to buy the plant and franchise for $150,000 cash. Whitsitt testified he began to feel the DeBauge deal of $100,000 cash, plus $72,000 in deferred payments as salary for consulting services, was not as advantageous to him as Wagstaff's second offer. He concluded the deferred payments made to him as salary would be reduced considerably by social security and income tax.

DeBauge Brothers, Inc., made the agreed payments to escrow, $5,000 at the time of signing and $45,000 on January 1, 1971, and took possession of the plant on that date. Later that month, despite a letter from Coca Cola agreeing to meet with DeBauge and Whitsitt on January 14, 1971, and approve transfer of the franchise, Whitsitt told DeBauge that Coca Cola would not accept them as franchisee; the deal was off, and he wanted the keys back. They surrendered the plant to him.

DeBauge Brothers, Inc., filed this suit for specific performance and $200,000 damages for lost rents and profits on March 25, 1971. Defendants admitted their refusal to deliver abstracts to the real estate and admitted they did not make formal application to Coca

Cola for approval of the franchise transfer as provided in the contract. They admitted execution of the contract, but alleged defendant G. C. Whitsitt did not have capacity to enter into a valid contract due to his age and infirmity. Defendants further alleged the contract was not subject to specific performance since it contained provisions for personal services.

Plaintiff moved for summary judgment, for specific performance, and for damages for loss of rents and profits. Wagstaff's offer of December 29, 1970, and the Coca Cola company's letter of December 30, 1970, offering to meet with DeBauge and Whitsitt to negotiate transfer of the franchise, were entered into evidence along with depositions of the parties, briefs of counsel, and oral arguments on the motion. The court sustained plaintiff's motion for summary judgment, ordered specific performance of the contract for sale, and an evidentiary hearing on the amount of damages due plaintiff for loss of rents and profits.

On appeal, defendants assert the court erred in ordering specific performance because the contract contained provisions for personal services and was unenforceable since it provided for making a separate contract for these services. They also claim specific performance was not necessary because plaintiff had an adequate remedy at law for damages.

We find no merit to these contentions. Plaintiff had no adequate remedy in money damages since the real and personal properties to be conveyed were unique and were not available to plaintiff from any other source. Land conveyances are frequently the subject of specific performance due to the unique properties of each parcel which cannot be duplicated. Franchises are by their very nature unique and exclusive, which is the source of their value to the possessor. A contract for sale or transfer of such a retail franchise, along with the real property necessary to operate the business, is a proper subject for specific performance. (*Heidner v. Hewitt Chevrolet Co.*, 166 Kan. 11, 199 P. 2d 481; 49 Am. Jur., Specific Performance, §§ 127, 128, 129, and 131, pp. 150-155.)

Defendants further contend the court erred in ordering specific performance because the contract included provisions for personal services and, to be complete, required execution of an additional contract for those services. It is our conclusion that the provisions for personal services of defendants were only incidental to the intent of the parties. It is clear that services of this kind by the defendants have some monetary value, but the payment provided

for them in the contract is clearly out of proportion to such value. In an equitable proceeding for specific performance of a contract, the court looks to the real intent of the parties and enforces the contract accordingly. Consulting services might be temporarily valuable following change of ownership, but it is obvious that after an initial period of operation, much less than six years, these consulting services will grow valueless as vendee's experience in the manufacture, sale and distribution of beverages increases. We conclude the real purpose of the payment of $12,000 per year was not for consulting services, but was a method of enforcing the agreement not to compete for the period. Had the contract not provided for these services, consideration for the sale of the business would have been the same, $172,000. It is apparent that the purchaser was willing to continue the deferred payments, even in the event of the death of the seller, G. C. Whitsitt, indicating payment was not dependent upon his performance of consulting services. The purchaser indicated in its brief that payment of the total consideration, including the deferred payments, was not dependent upon consulting services of the seller; and in argument before this court stated its willingness to pay the whole purchase price regardless of the availability of such services. It is a recognized principle of equity that a vendee, in an action brought by him for specific performance of a contract, may waive the performance on the part of the vendor of portions of his contract, and may elect to take a partial performance if he himself is willing to perform fully. (*Wallerius v. Hare*, 200 Kan. 578, 438 P. 2d 65.)

Defendant claims the court erred in granting specific performance because there is no mutuality of remedies. The argument has no merit as a matter of law. Mutuality of remedy does not require identical remedies. The granting or refusal of the decree is not to be determined by whether the remedy of specific performance is mutually available to both parties to the contract. Specific performance at the instance of one party will not be denied merely because that remedy is not available to the other party against whom specific performance is sought. This court has long been committed to the view that many valid contracts afford one party a remedy by an action for recovery of money, either upon a specific promise to pay or in an action for damages, while the other party may be entitled to specific performance. (*Zelleken v. Lynch*, 80 Kan. 746, 104 Pac. 563; *Beloit Bldg. Co. v. Quinn*, 141

Kan. 408, 41 P. 2d 762.) This point of view is also supported by 49 Am. Jur., Specific Performance, § 36, pp. 50, 51, and in 5A Corbin on Contracts, § 1179, p. 327.

Defendants' assertions of procedural errors in sustaining plaintiff's motion for summary judgment are without merit. They contend in their answer that G. C. Whitsitt had no capacity to contract due to his age and infirmity, and that this question of fact was at issue. The depositions of all interested parties were before the court. We find no indication in any of the testimony that Whitsitt did not understand the provisions of the agreement at the time of its execution. There was no complaint of fraud, overreaching, undue influence, or any other factor which, combined with his age, would indicate it was not Whitsitt's intention to sign the contract as written. The test of mental capacity to contract is whether the person possesses sufficient mind to understand in a reasonable manner the nature and effect of the act in which he is engaged. (*Mills v. Shepherd*, 159 Kan. 668, 157 P. 2d 533.) Since the testimony of all interested parties was before the trial court and there was a complete absence of any claim of lack of understanding of the effect of the contract, we conclude there was no genuine issue of fact as to his mental capacity. Summary judgment should be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact. (K. S. A. 60-256.) The trial court was justified in granting summary judgment for specific performance.

Affirmed.