Argued January 8, affirmed March 13, 1975

TINDULA ET UX, *Respondents, v.* BAUMAN ET AL, *Appellants.*

532 P2d 785

*Vawter Parker,* Portland, argued the cause for appellants. With him on the briefs were George L. Kirklin and Dezendorf, Spears, Lubersky & Campbell, Portland.

*William B. Reisbick,* Milwaukie, argued the cause for respondents. With him on the brief were Erlandson & Reisbick, Milwaukie.

HOWELL, J.

Plaintiffs filed this suit seeking specific performance to compel defendants to purchase the final two lots under a contract for the purchase of four lots. The trial court entered a decree granting specific performance and awarded attorney fees to plaintiffs. Defendants appeal.

The facts are not in substantial dispute.

In 1968 plaintiffs agreed to sell defendants four residential lots near the city of Lake Oswego. The contract contemplated that defendants would construct

dwellings on the four lots. The area was not served by a sewer system. The defendants constructed a dwelling, using a septic tank, on one lot and sold that property for a substantial profit. No further lots were sold or houses constructed until July, 1972, when plaintiffs threatened suit unless defendants purchased the other lots. Defendants paid plaintiffs for the second lot. In 1972 the Clackamas County Health Department advised defendants that it would no longer approve a septic tank sewage system. The defendants then advised plaintiffs that "we are claiming a right to a moratoriam on all payments either of principal or interest for this property until the matter of sewers is resolved." Thereafter plaintiffs filed this suit seeking specific performance of the sale of the remaining two lots.

■ The defendants contend that they should not be required to purchase the remaining two lots, relying on the doctrine of frustration of contract as a defense. The defendants cite 1 Restatement 427, Contracts § 288, and Comment *a* thereto:

"§ 288. Frustration of the Object or Effect of the Contract. Where the assumed possibility of a desired object or effect to be attained by either party to a contract forms the basis on which both parties enter into it, and this object or effect is or surely will be frustrated, a promisor who is without fault in causing the frustration, and who is harmed thereby, is discharged from the duty of performing his promise unless a contrary intention appears.

"Comment *a*: * * * The rule stated in the Section is applicable, however, though literal performance is still possible, and though that performance would be as beneficial to one of the parties as if the expected object of the contract were not frustrated."

Two of the necessary requisites to application

of the doctrine of frustration of contract mentioned in the Restatement are that the object or effect of the contract "is or surely will be frustrated" and that the promisor "is harmed thereby."

The evidence does not support the applicability of the doctrine in the instant case. Defendants' inability to acquire building permits does not show harm to defendants or that the object of the contract—the construction of residences—is frustrated. The evidence is clear that while septic tanks are no longer permitted in the area, a city sewer system is imminent. The president of defendant corporation testified:

"Q  Is an annexation of Glenmorrie View to the City of Lake Oswego currently imminent?

"A  It is my understanding it is.

"Q  And would that take place, what then would happen with reference to providing for a sanitary sewer system to lots 3, 4 and 5?

"A  It is my understanding that after the commission would approve the annexation and emergency act, that the area would be annexed to the City of Oswego, and grant applications, it is my understanding, are in process of being processed with the Federal government; sewers would be installed, and we would be able to receive building permits.

"Q  What is your company's intention, as soon as the problem of sanitation for those lots is resolved?

"A  We wish to develop the land. We have completed plans and have quite an investment just in site improvement."

The defendants' engineer testified to the same effect.

■ Because there was no provision in the contract excusing defendants from purchasing the lots if

they were unable to secure septic tank approval and because we do not believe the basis of the contract has been frustrated merely because the city is transferring from a septic tank sewage system to a mass sewer system, the plaintiffs are entitled to specific performance.

■ The defendants also contend that they are not in default under the terms of the contract.

The contract provided for a purchase price of $44,000 for the four lots, with a down payment of $1,000. It also stated that upon beginning of construction of a residence on any of the four lots, plaintiffs would execute a deed to defendants for the lot and receive a promissory note from defendants for $12,000 for each of the first three lots, and a note for $7,000 for the last lot constructed upon. Within six months after completion of construction of any residence, the defendants would pay the amount due for that particular lot. No interest was required "upon the beginning of construction of a residence."

Defendants apparently contend that the above provisions excuse them from continuing to purchase the lots because they cannot construct residences due to the lack of building permits. We agree with plaintiffs that defendants' obligations under the contract are included in a "catchall" provision of the contract which provides:

"(d) If, on February 1, 1970, the entire purchase price of $44,000.00 has not been paid, the balance due, including interest, shall then be paid by the Purchasers in sixty (60) equal monthly installments, commencing February 1, 1970, with interest continuing at six and one-half (6-1/2%) percent per annum."

Defendants admit to having made no payments since November, 1972, and that the taxes are in default. While the contract did provide for individual lot releases and payment therefor, we believe that the subsection above controls and that defendants were in default when they failed to make the monthly installments required in the event the contract had not been completed by the purchase of the individual lots.

■ Lastly, defendants contend that the trial court erred in awarding attorney fees to plaintiffs. The contract provided:

> "In case the Vendors institute suit to foreclose this contract or Purchasers institute suit or action to enforce any provisions hereof, the prevailing party shall be entitled to judgment for such sum as the Court may adjudge reasonable for attorney's fees in said suit or action and on appeal therefrom."

Under ORS 20.096(1) attorney fees may be recovered where the contract provides that attorney fees shall be awarded to one of the parties in a suit or action to enforce the contract. The statute awards the attorney fees to the prevailing party whether or not he is the party specified in the contract.[1] It is true in the instant case that the contract provides for attorney fees to plaintiffs in a "suit to foreclose" and plaintiffs' suit is for specific performance. However, the contract also provides for attorney fees to defendants as the buyers in "any suit or action to enforce

---

[1] ORS 20.096 states:

"Attorney fees and costs in proceedings to enforce contract. (1) In any action or suit on a contract, where such contract specifically provides that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or not, at trial or on appeal, shall be entitled to reasonable attorney fees in addition to costs and necessary disbursements."

any provision" of the contract. Under the statute, therefore, plaintiffs, as the prevailing parties, are entitled to attorney fees.

Affirmed.