Albert J. CASTAGNO and Bernice V. Castagno, his wife, Plaintiffs and Respondents,

v.

Melvin CHURCH and Esther C. Church, his wife, Defendants and Appellants.

No. 14412.

Supreme Court of Utah.

Aug. 5, 1976.

17. Note 16, supra.

Alan K. Jeppesen, Tooele, for defendants and appellants.

Edward Watson, Tooele, for plaintiffs and respondents.

MAUGHAN, Justice:

Defendants appeal from a judgment granting specific performance to plaintiffs, together with a rebate of the purchase price for 40 acres of land. We affirm and award costs to plaintiffs.

Plaintiffs, vendees, initiated this action seeking specific performance of a uniform real estate contract, wherein defendants, vendors, agreed to convey 40 acres of land, together with all water rights (including one second foot of water) in and to a well.

The parties executed the contract December 14, 1973. According to its terms, the total contract price was $32,000. Upon payment of $16,000, vendors conveyed 20 acres to plaintiffs. The remaining acreage and water rights were to be conveyed upon payment of the balance. At the time the contract was executed there was a well situated upon the property, and the vendees were granted the right to use the well. Plaintiffs commenced farming operations, and pumped water from the well. They were ordered to cease using the well by the State Engineer. Subsequently, plaintiffs tendered the balance owing under the contract demanding conveyance of the remaining 20 acres, and the one second foot of water. Defendants have been unable to procure water rights for the well.

The trial court found plaintiffs had fully performed their obligations under the contract; defendants had failed to perform that part of the contract requiring delivery of one second foot of water, and they were unable at the time of trial to do so. The real property in the contract had a value of $1500 per acre, provided one second foot of water was available. Without water, the reasonable value per acre was $500 per acre. The trial court ordered conveyance of the property with a rebate on the purchase price of $12,000.

On appeal, defendants contend that under the doctrine of frustration of performance, they were excused from performing, and specific performance should not have been imposed. The evidence indicated defendants acquired an assignment of certain water rights, but they have not been able to secure a change application, to divert one second foot of water to the well. No other water is available.

The doctrine of frustration is inappropriately invoked as a defense here. The applicability of this doctrine depends on the total or nearly total destruction of the purpose for which, in the contemplation of both parties, the transaction was made. Although performance remains possible, the expected value of performance to the party seeking to be excused has been destroyed, by a fortuitous event; which supervenes to cause an actual, but not literal failure of consideration.[1] Where the de-

1. Restatement, Contracts, § 288.

fense of frustration is proper, the issue is whether the equities, considered in the light of sound public policy, require placing the risk of destruction or disruption of the contract equilibrium on defendant or plaintiff,

. . . The purpose of a contract is to place the risks of performance upon the promisor, and the relation of the parties, terms of the contract, and circumstances surrounding its formation must be examined to determine whether it can be fairly inferred that the risk of the event that has supervened to cause the alleged frustration was not reasonably foreseeable. If it was foreseeable there should have been provision for it in the contract, and the absence of such a provision gives rise to the inference that the risk was assumed.

. . . The courts have required a promisor seeking to excuse himself from performance of his obligations to prove that the risk of the frustrating event was not reasonably foreseeable and that the value of counterperformance is totally or nearly totally destroyed, for frustration is no defense if it was foreseeable or controllable by the promisor, or if counterperformance remains valuable. [Citations] [2]

■ At the time of the execution of the contract, defendants knew there was no existing water right to the well. They undertook the duty to procure such a right, but they made no provision in the contract to excuse them, if the State Engineer did not grant their change application to divert a water right to the well. Furthermore, the basis of the contract, the conveyance of 40 acres of land, may not be deemed frustrated merely because defendants were unable to convey the water right.[3]

■ The trial court did not err in granting plaintiffs specific performance of the contract. The rule has been long established that a vendee has the right to insist upon performance by the vendor to the extent the latter is able to perform with an abatement in the purchase price equal to the value of the deficiency or defect.[4]

HENRIOD, C. J., and TUCKETT, J., concur.

CROCKETT, Justice (concurring).

I concur in affirmance of the judgment. But due to the difficulty concerning the measure of damages, desire to make this comment: It is true that normally the damages awardable for the failure to deliver one second foot of water would be the value of the water. However, insofar as we can discover, that point was not raised either in the district court or in this court. In fact, the plaintiff's own evidence, through their expert on value, Marcellus Palmer, was:

Q Now, what do you appraise this property then to be per acre without water?

A The subject property has had some improvement done on it. It's got a fairly good fence on it and to my opinion that in its native state that is without any irrigation, it's worth about $500 an acre. If it had a good water right it would be my opinion that it would be worth $1500 an acre.

The trial court awarded plaintiffs damages on their own theory. That is, a diminution in value of the land because of lack of water; and then scaled it down based on the contract price and acreage. Inasmuch as neither party has made any issue of that matter in this court, I join in affirming the judgment.

2. *Lloyd v. Murphy*, 25 Cal.2d 48, 153 P.2d 47, 50 (1944).

3. *Tindula v. Bauman*, Or., 532 P.2d 785 (1975).

4. *Murdock v. Pope*, 156 Colo. 7, 396 P.2d 841 (1964); *De Bauge Bros., Inc. v. Whitsitt*, 212 Kan. 758, 512 P.2d 487 (1973); *In Re Estate of Hayhurst*, Okl., 478 P.2d 343 (1970); *Levy v. Wolff*, 46 Cal.2d 367, 294 P.2d 945 (1956); *Caveny v. Asheim*, 202 Or. 195, 274 P.2d 281 (1954).

ELLETT, Justice (dissenting).

The defendants owned 40 acres of land on which a well had been drilled. They sold the land and well to the plaintiffs for $32,000. The contract of sale contained the following paragraphs:

Upon payment in full of said contract price, Sellers will convey by warranty deed the final easterly contiguous Ten (10) acres of said property, together with all water rights to well already drilled upon said property Certificate #————including Two (2) second feet of water, one second foot of which Buyer will furnish. Seller to Deed therewith an electric pump for said well. . . .

\* \* \* \* \* \*

Sellers further agree that Buyers shall have exclusive use of said Well and electric pump and 2 second feet of water from said Well until and during the period of said Contract until paid in full.

The water in the well was sufficient to permit the required flow; however, there was the problem of having an approval from the State Engineer to change the point of diversion. The defendants owned sufficient water to complete the contract but it came from a different basin and the State Engineer would not allow the parties to transfer the water to the well.

The plaintiff's father had died and the estate owned (or claimed to own) five second feet of water which plaintiff's mother, as administratrix of her husband's estate, transferred to plaintiff. The plaintiff then transferred three second feet of water to the defendants. This water was out of the same artesian basin as was the well in question. Defendants thereupon allocated one second foot of the water to the well and filed an application to have the point of diversion of the water changed to the new well. This application would have been granted had it not been for a protest of title filed by another man (also named Castagno) and the Federal Land Bank Association. The State Engineer set the matter for hearing, but the plaintiffs' attorney caused the hearing to be canceled. The procedure in the office of the State Engineer is to wait until there are other contests or protests and then send a deputy out to the county and hear all of them at one sitting. This suit was commenced before any further hearing could be had on the protest.

The trial court would not allow any testimony regarding the intentions of or agreements between the parties and held the contract was not ambiguous. Therefore, he looked only within the "four corners of the document." The defendants had agreed to furnish one second foot of water and had not done so. Therefore, the trial court granted judgment to the plaintiffs and assessed damages in the amount of $12,000.

The plaintiffs produced a witness who testified that the land with one second foot of water was worth $1,500 per acre, but without the water it was worth only $500 per acre.

If the court is right in finding a depreciation in land value of $1,000 per acre, one would think the plaintiffs' damages should be $40,000 instead of $12,000. The fault lies in the fact that the damage sustained is not a difference in the value of the land; rather, it would be the value of one second foot of water at the proposed site of diversion.

The plaintiffs still own two second feet of water and since the contract required them to furnish one second foot of water to the well, their land could not sustain any loss for the reason that one second foot of water would be more than ample to irrigate the 40 acres of land in question. A "second foot of water" is a flow which yields one cubic foot of water every second.

There are 86,400 seconds in a day (60 x 60 x 24). An acre of land contains 43,560 square feet. Therefore, in one day, one second foot of water would cover two acres of land one foot deep (86,400 divided by 43,560 equals 1.98347 feet). That would be one foot deep every 20 days for

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

the entire tract (40 divided by 2). This would be more than one foot of water every three weeks or over four inches of water per week which would seem to be enough water for a rice paddy and rice does not grow in Tooele County, Utah. There would be no diminution to the value of the land by reason of the failure to have two second feet of water upon it. As I said before, the damage, if any was sustained, would be the value of one second foot of water at the well, and there is no evidence in the record as to what that value would be.

A further point to be kept in mind is that if there is any defect in the title to the water which defendants assigned to the well, it ill behooves plaintiffs to complain about it for the title of defendants to that water came through the plaintiffs.

I would reverse the trial court and remand the matter for a new trial. I would also award costs to the defendants.